**BOULDER COUNTY BOARD OF EQUALIZATION, and the Colorado Board of Assessment Appeals, Petitioners,**

v.

**M.D.C. CONSTRUCTION COMPANY, Respondent.**

**No. 91SC293.**

Supreme Court of Colorado, En Banc.

May 26, 1992.

H. Lawrence Hoyt, Ruth E. Cornfeld, Boulder, for Boulder County Bd. of Equalization.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Thomas D. Fears, Asst. Atty. Gen., Denver, for Colorado Bd. of Assessment Appeals.

McGeady, Weston, & Sisneros, P.C., David H. Wollins, Michael A. Zahorik, Denver, for M.D.C. Const. Co.

Justice QUINN delivered the Opinion of the Court.

We granted certiorari to review the unpublished opinion of the court of appeals in *MDC Constr. Co. v. Board of Assessment Appeals* (Colo.App. No. 90CA0063, March 21, 1991), which reversed the Board of Assessment Appeals' determination that MDC, a landowner, was not entitled to have its land assessed for property tax purposes for the 1988 tax year as "agricultural land" under the then-existing version of section 39–1–102(1.6) and (13.5), 16B

C.R.S. (1987 Supp.). The Board of Assessment Appeals ruled that various activities of MDC with respect to the land, including its practice of leasing the land for grazing and ranch operations at a price that would not result in a monetary profit to MDC, were inconsistent with MDC's intent as landowner to engage in farming or ranching operations for the primary purpose of obtaining a profit. In reversing that decision, the court of appeals concluded that the critical factor qualifying MDC's land as "agricultural land" was the lessees' surface use of the land to graze animals for the purpose of making a profit. The Boulder County Board of Equalization and the Colorado Board of Assessment Appeals filed a petition for certiorari, which we granted,[1] and we now affirm the judgment of the court of appeals.

I.

The land in question consists of approximately 1200 acres, divided into a number of parcels, and is located within the incorporated boundaries of the Town of Superior in Boulder County. Most of the parcels are vacant land, with only five containing residential improvements. The land has been used for farming and ranching purposes since approximately 1942, and on January 6, 1987, it was annexed by the Town of Superior and zoned as a planned unit development for a variety of nonagricultural uses. Agricultural uses, however, were not prohibited by the Town of Superior.

At the time of the annexation the land was owned by Rock Creek Partnership, which agreed to provide a municipal water system to the Town of Superior and pledged its water rights to the town. In June 1987 MDC Construction (MDC), a landholding and development company, purchased the land from Rock Creek Partnership for $12,735,000, or approximately $10,500 per acre. MDC planned to develop the land at some future time, but in the interim intended to lease the land for farming and ranching operations. After pur-

chasing the land from Rock Creek Partnership, MDC leased approximately 800 acres to Joseph Scriffiny and the remainder of the land to Regina Hobika. Both Scriffiny and Hobika were legitimate and bona fide rancher-farmers.

The Scriffiny lease provided for a $400 monthly payment, but Scriffiny was permitted to perform maintenance work on the land in lieu of payment. Scriffiny used approximately 240 acres as farm land on which he grew hay for winter feed, and he used the remaining 600 acres to graze his cattle, which numbered from 70 to 90. The primary purpose of Scriffiny's use of the land was to obtain a monetary profit, and Scriffiny in fact did make a profit from his agricultural operations for the years 1986, 1987, and 1988. Although the lease did not include MDC's water rights on the property, MDC permitted Scriffiny to use as much water as he needed for his operations.

Hobika had been leasing her parcel of land since 1985 for the purpose of boarding and breeding horses. Hobika's lease provided for a $300 monthly payment for the use of a residence on the property and an additional $300 monthly payment for the use of the property itself and four outbuildings, which consisted of two barns, a tack room, and a three-sided shed. Hobika testified that her operations were unprofitable in 1986, 1987, and 1988, but that she expected to make a profit by the year 1990. Although Hobika's lease did not include the use of MDC's water rights, Hobika was permitted to use water as needed for her operations.

Effective January 1, 1988, the Boulder County Assessor reclassified MDC's property for 1988 tax purposes from "agricultural" to "vacant" land. The reclassification was based on several factors, including the high purchase price paid by MDC for ultimate use of the land for development, the annexation of the land to the Town of Superior, the rezoning of the land to a planned unit development, the pledg-

1. The Boulder County Board of Equalization and the Colorado Board of Assessment Appeals petitioned for certiorari, and thereafter filed a joint brief in support of their position. We refer collectively to both petitioners as the Board of Assessment Appeals.

ing of water rights by Rock Creek Partnership to the Town of Superior, and inadequate evidence of any monetary profit to MDC from agricultural operations on the land.

MDC unsuccessfully appealed the reclassification to the Boulder County Board of Equalization and then to the Colorado Board of Assessment Appeals. The Board of Equalization concluded that MDC had not presented sufficient evidence to rebut the presumption in favor of the assessor. The Board of Assessment Appeals concluded that the landowner, rather than the lessee, must utilize the land as "agricultural land" for the primary purpose of obtaining a profit and that the following factors were inconsistent with that purpose:

> One, annexing a farm or ranch to a town, receiving PUD zoning, and dedicating the water rights to a municipal water system; two, leasing 200 acres of irrigated land and 600 acres of pasture for $450 per month, or $23.52 per acre per year; and three, stating in a lease that no water rights are included, leasing the land at a dry-land rate, then giving the lessee all the water needed.

The court of appeals reversed the decision of the Board of Assessment Appeals and remanded the case to the Board with directions to enter an order classifying MDC's land as agricultural land for purposes of the tax assessment for the 1988 tax year. Noting that there is no requirement in the statutory scheme that the property owner actually graze livestock on the land for the primary purpose of making a profit or that the owner's leasing activity be conducted for the owner's own profit, the court of appeals concluded that the Board of Assessment Appeals "erred in interpreting the statute to require that the 'primary purpose' be applied to the landowner's intent rather than to the lessees' activities and the actual surface use of the land." *MDC Constr. Co.*, No. 90CA0063, slip op. at 2. We granted certiorari to consider whether the court of appeals properly concluded that MDC's land qualified as "agricultural land" for tax assessment purposes.

## II.

As a prelude to our resolution of the question before us, we briefly review the constitutional and statutory standards by which land was classified and valued for tax assessment purposes at the time of the 1988 assessment at issue before us. We cite to those provisions of the General Property Tax Law in effect as of the date of the reclassification and appraisal of MDC's land, which was January 1, 1988. *See* § 39–1–105, 16B C.R.S. (1987 Supp.) (all taxable property appraised and valued for assessment purposes on January 1 of each year).

The Colorado Constitution states that all taxes upon real property shall be uniform and distinguishes agricultural and residential property from other types of real property for assessment purposes. Colo. Const. art. X, § 3(1)(a), 1A C.R.S. (1991 Supp.). Generally, valuations for assessment must be based on appraisals made by assessing officers for the purpose of determining the actual value of the property in accordance with provisions of law, "which laws shall provide that actual value be determined by appropriate consideration of cost approach, market approach, and income approach to appraisal." *Id.* Article X, section 3 of the Colorado Constitution, however, gives special tax consideration to agricultural lands by providing that "the actual value of agricultural lands, as defined by law, shall be determined solely by consideration of the earning or productive capacity of such lands capitalized at a rate as prescribed by law." Colo. Const. art. X, § 3(1)(a), 1A C.R.S. (1991 Supp.).

In keeping with these constitutional provisions, the General Property Tax Law, §§ 39–1–101 to –120, 16B C.R.S. (1982 & 1987 Supp.), includes a legislative declaration that its provisions shall be strictly construed for the purpose of securing a just and equalized valuation for assessment of all real and personal property not exempt from taxation. § 39–1–101, 16B C.R.S. (1987 Supp.). The statutory scheme requires the assessor of the county wherein the real property is located to appraise

the property and determine its actual value for property tax purposes. § 39–1–103(5)(a), 16B C.R.S. (1987 Supp.). With the exception of agricultural lands exclusive of building improvements, residential property, and producing mines and lands or leaseholds producing oil or gas, the actual value of real property is determined "by appropriate consideration of the cost approach, the market approach, and the income approach to appraisal." *Id.* In the case of agricultural lands, section 39–1–103(5)(a) states that the actual value, exclusive of building improvements thereon, "shall be determined by consideration of the earning or productive capacity of such lands during a reasonable period of time, capitalized at a rate of thirteen percent." Vacant land, in contrast, is treated as any other type of real property not accorded special tax consideration, and its actual value is determined by considering the cost approach, the market approach, and the income approach to appraisal.

"Agricultural land" is defined by section 39–1–102(1.6), 16B C.R.S. (1987 Supp.), as follows:

(a) "Agricultural land" means a parcel of land which was used the previous two years and presently is used as a farm or ranch, as defined in subsections (3.5) and (13.5) of this section, or which is in the process of being restored through conservation practices. Such land must have been classified or eligible for classification as "agricultural land", consistent with this subsection (1.6), during the ten years preceding the year of assessment. Such land must continue to have actual agricultural use. "Agricultural land" includes land underlying any residential improvement located on such "agricultural land" and also includes the land underlying other improvements if such improvements are an integral part of the farm or ranch and if such other improvements and the land area dedicated to such other improvements are typically used as an ancillary part of the operation.[2]

(b) All other agricultural property which does not meet the definition set forth in paragraph (a) of this subsection (1.6) shall be classified as all other property and shall be valued using appropriate consideration of the three approaches to appraisal based on its actual use on the assessment date.[3]

2. In 1990 the definition of "agricultural land" was amended and defined, in relevant part, as follows:

[A] parcel of land, whether located in an incorporated or unincorporated area and regardless of the uses for which such land is zoned, which was used the previous two years and presently is used as a farm or ranch, as defined in subsections (3.5) and (13.5) of this section, and the gross income resulting from such use equals or exceeds one-third of the total gross income resulting from all uses of the property during any given property tax year.... Such land must have been classified or eligible for classification as "agricultural land", consistent with this subsection (1.6), during the ten years preceding the year of assessment. Such land must continue to have actual agricultural use.

Ch. 277, sec. 16, § 39–1–102(1.6)(a), 1990 Colo. Sess.Laws 1687, 1695–96. Although we resolve this case on the basis of the statutory scheme in effect at the time of the 1988 assessment, we note in passing that the 1990 amendment states that annexation and zoning are irrelevant for purposes of agricultural classification and that land will qualify as agricultural land as long as the gross income from the agricultural operations on the land equals or exceeds one-third of the total gross income of the property.

3. When this case arose, there was no statutory definition of "vacant land," with the result that any land not meeting the definition of agricultural land could be classified as "vacant." Effective June 7, 1988, section 39–1–103(14) was amended to provide as follows:

(a) The general assembly hereby finds and declares that, in determining the actual value of vacant land, there appears to exist a wide disparity in the treatment of vacant land by the assessing officers of the various counties; that the methods of appraisal currently being utilized by assessing officers for such valuation remain unclear; and that such assessing officers are provided detailed information concerning the appraisal of vacant land in the manuals, appraisal procedures, and instructions prepared and published by the administrator.

(b) The assessing officers shall give appropriate consideration to the cost approach, market approach, and income approach to appraisal as required by the provisions of section 3 of article X of the state constitution in determining the actual value of vacant land. When using the market approach to appraisal in determining the actual value of vacant land, assessing officers shall take into account, but need not limit their considera-

A "farm" is defined as "a parcel of land which is used to produce agricultural products that originate from the land's productivity for the primary purpose of obtaining a monetary profit." § 13–1–102(3.5), 16B C.R.S. (1987 Supp.). Subsection (13.5) of section 39–1–102, 16B C.R.S. (1987 Supp.), defines a "ranch" as follows:

> "Ranch" means a parcel of land which is used for grazing livestock for the primary purpose of obtaining a monetary profit. For the purposes of this subsection (13.5), "livestock" means domestic animals which are used for food, draft, or profit.

### III.

■ The facts underlying this case are basically undisputed. What is at issue is the application of the law to those facts. In urging reversal of the judgment, the Board of Assessment Appeals contends that the court of appeals erred in holding that the lessees' use of the MDC property for the primary purpose of making a profit from their ranching operations, rather than MDC's activities with respect to the land and its intent in purchasing and maintaining the property, was the determinative factor in qualifying the property as "agricultural land." We reject the Board's argument and conclude that the text of section 39–1–102, 16B C.R.S. (1987 Supp.), supports the decision of the court of appeals.

■ The Colorado Constitution, in addition to providing special tax consideration to agricultural land by requiring that such lands be valued solely by considering their earning or productive capacity, vests the General Assembly with the authority to define agricultural land for tax assessment purposes. Colo. Const. art. X, § 3(1)(a), 1A C.R.S. (1991 Supp.). The General Assembly has defined agricultural lands in subsection (1.6)(a) of section 39–1–102, 16B C.R.S. (1987 Supp.), and our function here is not to question the wisdom of that definition. Rather, our responsibility is to construe and apply the statute in accordance with legislative intent. *Kern v. Gebhardt*, 746 P.2d 1340, 1344 (Colo.1987); *Engelbrecht v. Hartford Accident and Indem. Co.*, 680 P.2d 231, 233 (Colo.1984). To determine that intent we look primarily to the language of the statute itself with a view toward giving effect to the statutory terminology in accordance with its commonly accepted meaning. *Kern*, 746 P.2d at 1344. When the statutory language is plain, it should not be subjected to a strained or forced interpretation. *Id.*

■ The focus of the statutory definition of agricultural land in section 39–1–102, 16B C.R.S. (1987 Supp.), is clearly on present and past surface use of the land without regard to any future intent on the part of the owner to develop the land for nonagricultural purposes. To qualify as "agricultural land" under subsection (1.6), the land must be presently *used* as a farm or ranch, must have been *so used* during the two-year period prior to the assessment, must have been classified or eligible for classification as "agricultural land"

---

tion to, the following factors: The anticipated market absorption rate, the size and location of such land, the cost of development, any amenities, any site improvements, access, and use. When using anticipated market absorption rates, the assessing officers shall use appropriate discount factors in determining the present worth of vacant land until at least eighty percent or more of the lots within an approved plat have been sold and shall include all vacant land in the approved plat. The use of present worth shall reflect the anticipated market absorption rate for the lots within such plat, but such time period shall not generally exceed ten years.

(c)(I) For purposes of this subsection (14), "vacant land" means any lot, parcel, site, or tract of land upon which no buildings, structures, or fixtures are located. "Vacant land" may include land with site improvements. "Vacant land" may include land with improvements that may be part of a development tract or subdivision when using present worth discounting in the market approach to appraisal. "Vacant land" does not include agricultural land, producing oil and gas properties, severed mineral interests, and all mines, whether producing or nonproducing.

(II) For purposes of this subsection (14), "site improvements" means streets with curbs and gutters, culverts and other sewage and drainage facilities, and utility easements and hookups for individual lots or parcels.
Ch. 268, sec. 4, § 39–1–103(14), 1988 Colo.Sess. Laws 1276, 1281.

during the ten years preceding the assessment year, and must continue to have *actual agricultural use*. Pursuant to subsection (3.5) of section 39–1–102, a parcel of land satisfies the definition of a "farm" when the land *is used* to produce agricultural products originating from the land's productivity for the primary purpose of making a monetary profit. In similar fashion, pursuant to subsection (13.5) of this statute, a parcel of land qualifies as a "ranch" when the land *is used* for grazing livestock for the primary purpose of making a profit. These statutory provisions demonstrate that the surface use of the land for monetary profit from agricultural activities, and not the owner's plans or intent with respect to future development, is the determinative factor in the classification of land as "agricultural land" for property tax assessment purposes.

■ The statutory text of section 39–1–102 is devoid of any language suggesting that the General Assembly intended to differentiate between, on the one hand, a lessee's primary purpose in using the land and, on the other, the landowner's primary purpose in acquiring and maintaining ownership of the land. Nor is there any indication in the statutory text of section 39–1–102 that the landowner must actually profit or intend to profit from agricultural operations on the land conducted by the owner's lessees. Where, as here, the standards for classification of land as "agricultural land" are clearly cast in terms of the surface use of the land, those standards should be applied as written and should not be subjected to an interpretation that incorporates factors not contained within the statutory text. *Rancho Colorado, Inc. v. City of Broomfield,* 196 Colo. 444, 447, 586 P.2d 659, 661 (1978) (courts should not interpret statute to mean that which it does not express). We agree in this respect with the reasoning of the court of appeals in *Estes v. Board of Assessment Appeals,* 805 P.2d 1174, 1175 (Colo.App.1990), wherein the court stated:

> There is no requirement in the statute that the property *owner* be the one who grazes livestock on the parcel for the primary purpose of making a profit or

that the owner's leasing activity be conducted for profit to the owner. Rather, the statute requires only that the land actually be used for grazing livestock, which, in turn, must be done for the primary purpose of obtaining a profit from the grazing activities. (emphasis in original).

*See also Arapahoe Partnership v. Board of County Comm'rs,* 813 P.2d 766 (Colo. App.1990); *C.A. Staack Partnership v. Board of County Comm'rs,* 802 P.2d 1191 (Colo.App.1990).

■ Our holding in *Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146, 153 (Colo.1988), that reasonable future use is a relevant factor in determining the market value of commercial property for tax purposes does not militate in favor of a different analysis. Agricultural land is appraised on the basis of its earning or productive capacity, while commercial property is appraised by an appropriate consideration of the cost approach, market approach, and the income approach to appraisal. Colo. Const. art. X, § 3. Nor does the fact that the Board of Assessment Appeals adopted an administrative interpretation at variance from the court of appeals' analysis compel a different result. While the construction of a statute by the agency charged with its enforcement is entitled to deference, courts are not bound by that construction where the result reached by the agency is inconsistent with legislative intent as manifested in the statutory text. *E.g., Colorado Div. of Employment and Training v. Parkview Episcopal Hosp.,* 725 P.2d 787, 791 (Colo.1986). The interpretation adopted by the Board of Assessment Appeals is contrary to the plain terms of the statute.

In this case there is no question that the land was used by the lessees, Scriffiny and Hobika, as ranch or farm land at the time of the 1988 assessment and had been so used during the two year period preceding the assessment. The record shows that for three years preceding the 1988 assessment Scriffiny had been raising cattle and growing hay on his parcel and that Hobika had been boarding and breeding horses on her

parcel. The record also demonstrates that the land had been used for grazing livestock and agricultural operations as far back as 1942 and, thus, had been eligible for classification as agricultural land during the ten year period preceding the 1988 assessment. Finally, both Scriffiny and Hobika testified—and their testimony was essentially undisputed—that their primary objective in conducting their agricultural activities on their respective parcels was to make a profit.

In light of the statutory text of section 39–1–102, 16B C.R.S. (1987 Supp.), and the evidentiary state of the record, we affirm the judgment of the court of appeals.

LOHR, J., dissents, and MULLARKEY, J., joins in the dissent.

Justice LOHR dissenting:

The majority holds that in determining whether leased land is to be classified as agricultural land for property tax purposes, only the lessee's actual use of the land and the lessee's purpose in putting the land to such use are relevant. As a result, a landowner-lessor can reap the large property tax benefit that results from classification of land as agricultural by structuring an agricultural lease with rental rates and other terms highly advantageous to the lessee, thereby enabling the lessee to operate for the primary purpose of obtaining a monetary profit. Because I believe this construction of the relevant statutes is incorrect and results in valuations for assessments that are not "just and equalized," see Colo. Const. art. X, § 3(1)(a), I respectfully dissent.

The land that is the subject of this litigation consists of approximately 1200 acres in Boulder County. Historically, it was used for farming and ranching purposes. In 1987 M.D.C. Construction Company (MDC), a land developer, purchased the land for $12,735,000. Pending future development, MDC leased approximately 800 acres to

Joseph Scriffiny for raising hay and pasturing cattle. The remainder of the property was leased to Regina Hobika for horse boarding and breeding. Details on the terms of these leases and the manner in which the lessees used the lands are set forth in the majority opinion. See maj. op. at 977.

Effective January 1, 1988, the Boulder County Assessor reclassified the land from agricultural land to vacant land. Because of the advantageous manner of valuing agricultural land prescribed by the Colorado Constitution, article X, section 3(1)(a), this change resulted in increased taxes to MDC for 1988 represented by the difference between $123,090, the tax applicable if the land was properly classified as vacant, and $5,331, the tax applicable based on an agricultural classification.[1] MDC appealed unsuccessfully to the Boulder County Board of Equalization and was also unsuccessful in overturning the classification in a de novo hearing before the Board of Assessment Appeals. The Colorado Court of Appeals, however, reversed that latter decision and remanded for classification as agricultural land, based on the property's use as a "ranch." *M.D.C. Construction Co. v. Board of Assessment Appeals*, No. 90CA0063 (Colo.App. March 21, 1991) (not selected for publication). The majority now upholds the court of appeals' judgment.

The Colorado Constitution provides for just and equalized valuations for assessments for all real property. Colo. Const. art. X, § 3(1)(a). The Constitution provides that the actual value of property other than agricultural or residential property is to be determined "by appropriate consideration of cost approach, market approach, and income approach to appraisal." *Id.* Agricultural lands, however, are to be "defined by law" and valued "solely by consideration of the earning or productive capacity of such lands capitalized at a rate as pre-

---

1. These figures represent the tax differential calculated by the Board of Assessment Appeals as set forth in its brief to this court. In testimony before the Board of Assessment Appeals, MDC's comptroller estimated the increase that would occur based on a change in classification of the property from agricultural land to vacant land to be a roughly comparable amount.

scribed by law." *Id.* [2] Accordingly, when the true value of land subject to an agricultural lease is greater than the value arrived at by capitalization of its earning capacity, classification of the property as agricultural lands results in a tax advantage to the owner.

The legislature has exercised its constitutional power to define agricultural lands. Section 39–1–102(1.6), 6B C.R.S. (1987 Supp.), provides in pertinent part:

(a) "Agricultural land" means a parcel of land which was used the previous two years and presently is used as a farm or ranch, as defined in subsections (3.5) and (13.5) of this section, or which is in the process of being restored through conservation practices. Such land must have been classified or eligible for classification as "agricultural land", consistent with this subsection (1.6), during the ten years preceding the year of assessment. Such land must continue to have actual agricultural use.[3]

At issue here is whether the property is used as a ranch as defined by section 39–1–102(13.5). Pursuant to that definition:

"Ranch" means a parcel of land which is used for grazing livestock for the primary purpose of obtaining a monetary profit. For the purposes of this subsection (13.5), "livestock" means domestic animals which are used for food, draft, or profit.

§ 39–1–102(13.5), 6B C.R.S. (1987 Supp.).

Familiar principles guide us in construing these statutory provisions. "A statute must be construed in a manner consistent with constitutional requirements whenever reasonable and practical." *Romero v. Sandoval,* 685 P.2d 772, 776 (Colo.1984); *accord* § 2–4–201(1)(a), 1B C.R.S. (1980). Our primary purpose is to determine and give effect to the legislative intent. *Kern v. Gebhardt,* 746 P.2d 1340, 1344 (Colo. 1987). "There is a presumption that the General Assembly intends a just and rea-

sonable result when it enacts a statute...." *Ingram v. Cooper,* 698 P.2d 1314, 1315 (Colo.1985); *accord* § 2–4–201(1)(c). We must also presume that the public interest is favored over any private interest. § 2–4–201(1)(e). Furthermore, the construction given a statute by administrative officials charged with its enforcement is to be given deference by the courts. *E.g., Colorado Civil Rights Comm'n v. Travelers Ins. Co.,* 759 P.2d 1358, 1366 (Colo.1988); *City & County of Denver v. Industrial Comm'n,* 690 P.2d 199, 203 (Colo.1984).

The majority, focusing on the term "use," finds the meaning of sections 39–1–102(1.6) and (13.5) clear. The majority concludes that the language of these provisions relates solely to surface use and that the intent of the surface user—here the lessees—is the only relevant intent in determining whether the use is for the primary purpose of obtaining a monetary profit. Maj. op. at 981. I discern no such clarity in the statutory language.

The propriety of the agricultural classification at issue depends upon whether the property is used for grazing livestock *"for the primary purpose of obtaining a monetary profit."* § 39–1–102(13.5) (emphasis added). This requirement indicates that the legislature was concerned with something more than the appearance or surface use of the property. Merely grazing livestock on land will not automatically qualify the property as a ranch, and thus as agricultural lands, for property tax purposes. In addition, it must be shown that such activity is conducted for the primary purpose of obtaining a profit. *See id.*

I believe the purpose of the special constitutional treatment of agricultural land and the legislative requirement of a purpose to make a profit was to limit the advantageous agricultural lands classification to bona fide farming or ranching oper-

---

**2.** Residential real property, not at issue here, is the only other class of property valued differently from the manner of valuing all other property. Only the cost approach and market approach are to be used in valuing residential property. *Colo. Const. art. X, § 3(1)(a).*

**3.** As the majority opinion notes, the definition of "agricultural land" was amended in 1990, but the statutory change is not relevant to the present case. *See* maj. op. at 979 n. 2.

ations. The result of the majority opinion, however, is to permit owners to obtain this preferential tax classification by leasing property to persons such as Scriffiny and Hobika at below market or even nominal rates, thus allowing the lessees to make a profit from land that otherwise could not profitably support a ranching operation. This extends the tax benefit conferred on agricultural lands to persons who conduct ranching activities on their property not for the purpose of obtaining a profit, but for the purpose of obtaining a significant tax reduction. Consequently, these property owners avoid the constitutional requirement of just and equalized valuation for assessment.

The Board of Assessment Appeals, the agency charged with administering the system of property tax valuation, construed the statutes to prevent this result, holding that in the statutory definition of "ranch," "the obligation to be in operation for the primary purpose of obtaining a monetary profit applies to the land owner and does not apply to the lessee or [sic] the land." The Board of Assessment Appeals detailed the characteristics of the Scriffiny and Hobika leases, as well as MDC's activities in preparing the land for development, in its findings and concluded

> that the following practices of [MDC] are not consistent with farming and ranching for the primary purpose of obtaining a monetary profit: (1) annexing a farm or ranch to a town, receiving PUD zoning and dedicating the water rights to a municipal water system; (2) leasing 280 acres of irrigated land and 600 acres of pasture land for $450.00 per month, or $23.52 per acre per year; and (3) stating in a lease that no water rights are included, leasing the land at a dry land rate, then giving the lessee all the water needed.

There is no contention that the Board's findings are not supported by the record. Under these circumstances, I believe the Board properly determined that the property did not qualify as a "ranch" and therefore was not entitled to assessment as "agricultural land."

I would reverse the judgment of the court of appeals and direct affirmance of the decision of the Board of Assessment Appeals. Accordingly, I respectfully dissent.

MULLARKEY, J., joins in this dissent.