921 P.2d 717 (1996)
DOUGLAS COUNTY BOARD OF EQUALIZATION, Petitioner,
v.
Edith CLARKE and Board of Assessment Appeals of the State of Colorado, Respondents.
DOUGLAS COUNTY BOARD OF COMMISSIONERS, Petitioner,
v.
MISSION VIEJO BUSINESS PROPERTIES and Board of Assessment Appeals of the State of Colorado, Respondents.
Nos. 95SC45, 95SC398.
Supreme Court of Colorado, En Banc.
June 24, 1996.
As Modified on Denial of Rehearing August 19, 1996.
*718 Thomas W. McNish, Assistant County Attorney, Office of Douglas County Attorney, Castle Rock, for Douglas County Board of Commissioners and Douglas County Bd. of Equalization.
Downey & Knickerrehm, P.C., Thomas E. Downey, Jr., Henry J. Rickelman, Denver, for Mission Viejo Business Properties.
Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Maurice Knaizer, Deputy Atty. Gen., Larry A. Williams, First Asst. Atty. Gen., Mark W. Gerganoff, Assistant Attorney General, General Legal Services Section, Denver, for Board of Assessment Appeals.
Holland & Hart, Alan Poe, Mary D. Metzger, Englewood, for Edith Clarke.
Justice KOURLIS delivered the Opinion of the Court.
We granted certiorari in two related cases, Clarke v. Douglas County Board of Equalization, 899 P.2d 240 (Colo.App.1994), and Douglas County Board of Commissioners v. Mission Viejo Business Properties, No. 93CA2115 (Colo.App. April 20, 1995) (not selected for official publication), to determine whether the definition of "agricultural land" for ad valorem taxation purposes in section 39-1-102(1.6)(a)(I), 16B C.R.S. (1994), requires that actual grazing take place in the tax year in question and in the prior two years.[1]
We conclude that the plain meaning of the statute requires the taxpayer to prove that the land was actually grazed unless (1) the reason the land was not grazed related to a conservation practice; or (2) the land is part of a larger functional agricultural unit on which grazing or conservation practices have been occurring. Because we are unclear as to the basis for the Board of Assessment Appeals' (BAA) conclusions that the taxable land here at issue was agricultural, we reverse and remand to the court of appeals with directions to return the cases to the BAA for additional findings and conclusions consistent with the standards set out in this opinion.

I.

A. Clarke Property
The two cases implicate the same legal principle but different facts. We first address the Clarke case, which involves a 23.7 acre parcel of land now located within the Town of Parker. The record before the BAA indicates that the Clarke family purchased the 23.7 acre parcel in 1951 as part of a much larger unit and used the entire tract for farming and ranching for almost forty years. In 1990, Edith Clarke sold a portion to a third party for use as a manufacturing and distribution facility. At that time, the 23.7 acre parcel here at issue, which was adjacent to the portion that had been sold, was subdivided into a lot known as Lot 2, Block 1 Clarke I C.P.F. Commercial Addition Filing # 1 (hereinafter "Lot 2").
*719 In 1990, Clarke leased Lot 2 together with other property to Martin Cockriel who operated a horse and cattle business. The only income to Clarke from Lot 2 was the rental income from Cockriel. In tax years 1991 and 1992, the Douglas County Assessor reclassified Lot 2 from agricultural to commercial vacant land. Clarke appealed the Assessor's 1992 classification[2] to the BAA.
At the hearing, the evidence was undisputed that Lot 2 was not used for grazing livestock in 1991, in part because of unavailability of water. During 1991, Lot 2 was used only as a polo field. In 1992, Cockriel began to use Lot 2 for grazing in conjunction with other adjacent property to the north that he had leased from a third party on which water was available. During 1992, Cockriel grazed approximately fifteen to eighteen head of horses on Lot 2.
The BAA concluded that the 1992 classification of the subject property should be restored to agricultural. The BAA stated:
After careful consideration of all of the evidence and testimony presented, the Board determined that the classification of the subject property was improper. Petitioner has a lease for the subject property, evidence indicating that there was grazing on the subject property in 1992. The lessee has leased this property and other properties to obtain a monetary profit. There are times in a farming and ranching operation that some portion of a farm or ranch will not be used for grazing in a particular year. Most operators have excess pasture to be prepared for the changes in weather and seasons.
The Douglas County Board of Equalization appealed the BAA's ruling to the court of appeals and the court of appeals affirmed. See Clarke v. Douglas County Bd. of Equalization, 899 P.2d 240 (Colo.App.1994).

B. Mission Viejo Property
In 1987, Mission Viejo Business Properties (Mission Viejo) purchased 21,437 acres of land from the Phipps family, who had operated it as a ranch. Mission Viejo continued to ranch the land under the auspices of Sand Creek Cattle until 1987. At that time, Mission Viejo entered into a grazing lease with LEI Farms. Initially, the lease did not specifically include the four parcels that are the subject of this action; however, in 1990, the lease was amended to include them. The earlier version of the lease did refer to all undeveloped land owned by Mission Viejo, and there was evidence before the BAA that the parties had intended to include the four parcels.
The four parcels are variously described as: Filing 57A, Lots 2-6 (Docket No. 23670) consisting of five platted lots totalling 22.098 acres (Parcel 1); Filing 26, Lot 3 (Docket No. 23671) consisting of one platted 10 acre lot (Parcel 2); Parcel 0328429 (Docket No. 23672) consisting of one unplatted 8.1 acre parcel adjacent to Lot 3 in Filing 26 (Parcel 3); and Filing 20, lots 2-11 (Docket No. 23673) consisting of ten platted lots totalling 27.45 acres (Parcel 4). The parcels are scattered throughout northern Douglas County and the record reflects that each parcel is bounded by at least two roads.
The evidence in the record indicates that in 1987 and 1988, no grazing occurred on Parcels 2 and 3, and that in 1988 no grazing took place on Parcel 1. In 1989, grazing did occur on those parcels. There was further evidence that Parcel 4 was grazed in both 1988 and 1989, but the evidence as to 1987 is unclear. In 1989, the Douglas County assessor reclassified the four parcels as commercial vacant land. Mission Viejo filed an unsuccessful petition for abatement or refund of taxes based on the 1989 classification and then sought recourse before the BAA.
After a hearing, the BAA concluded that the parcels should have retained their agricultural classification. The BAA stated:
After careful consideration of all testimony and evidence presented, the Board determined the subject properties should be classified agriculture for 1989. The Board determined the operation of the ranch was continued with the lease to Mr. Bob Walker *720 [LEI Farms] in October 1987. The evidence indicates the parcels were used or could have been used in the normal operation of the ranch. The evidence indicated there has been a plan in place, as the property is developed, fences are built or removed by the developer in order to utilize the fenced property as part of the ranch. The fences are then maintained by the lessee.
The Douglas County Board of Commissioners appealed the BAA's ruling to the court of appeals and the court of appeals affirmed. See Douglas County Bd. of Comm'rs v. Mission Viejo Business Properties, No. 93CA2115 (Colo.App. April 20, 1995) (not selected for official publication).

C.
The Douglas County Board of Equalization and the Douglas County Board of Commissioners (collectively "Douglas County") petitioned for certiorari review in their respective cases. We granted certiorari to determine:
Whether the definition of "agricultural land" for ad valorem tax purposes in section 39-1-102(1.6)(a)(I), 16B C.R.S. (1994), requires that actual grazing take place in the tax year in question and in the prior two years.[[3]]
We now hold that section 39-1-102(1.6)(a)(I), 16B C.R.S. (1994), requires that the parcel of land in question actually be used in conjunction with grazing of livestock. This requires either that actual grazing take place in the tax years in question unless the reason for the non-use relates to conservation of the land or the parcel is part of a larger unit on which grazing or conservation is occurring. In the Clarke case, the BAA found that grazing did not take place in each year; however, its findings could be read to indicate that the reason for the non-use was somehow related to conservation. Similarly, in the Mission Viejo case, we cannot determine whether either of the necessary criterion have been met, thus, we reverse the decision of the BAA and the court of appeals. We remand the case to the court of appeals with directions to return the case to the BAA for further fact-finding under the guidelines set forth in this opinion.

II.
Agricultural land in Colorado receives favorable ad valorem tax treatment, calculated on the basis of the earning or productive capacity of the land. See Colo. Const. art. X, § 3; § 39-1-103(5)(a), 16B C.R.S. (1994). Therefore, classification of property as agricultural is a benefit that was carved out to encourage and to protect ongoing agricultural use.[4] Our task in the cases before the court is to construe the statutes framing and defining that tax classification.
Specifically, we are called upon to determine the meaning of the two statutes that govern this issue. The first is section 39-1-102(1.6)(a)(I), which provides in pertinent part:
(1.6) (a) "Agricultural land" means either of the following:
(I) A parcel of land ... regardless of the uses for which such land is zoned, which was used the previous two years and presently is used as a farm or ranch, as defined in subsections (3.5) and (13.5) of this section, and the gross income resulting from such use equals or exceeds one-third *721 of the total gross income resulting from all uses of the property during any given property tax year, or which is in the process of being restored through conservation practices. Such land must have been classified or eligible for classification as "agricultural land", consistent with this subsection (1.6), during the ten years preceding the year of assessment. Such land must continue to have actual agricultural use...
§ 39-1-102(1.6)(a)(I), 16B C.R.S. (1994) (emphasis added). The second governing statutory provision is section 39-1-102(13.5), 16B C.R.S. (1994), which defines a "Ranch" as a "parcel of land which is used for grazing livestock for the primary purpose of obtaining a monetary profit."
In both the Clarke and Mission Viejo cases, the taxpayers argue for a broad interpretation of sections 39-1-102(1.6)(a)(I) and (13.5). The taxpayers claim that a narrow construction of these sections, requiring actual grazing on each parcel of land annually, would be too limiting. Douglas County argues that actual agricultural use of a parcel of land means that actual grazing must take place on every parcel every year.
The BAA ruled in both cases that a taxpayer does not have to have actual grazing on every parcel of property every year. In the Clarke case, the BAA found that the lack of actual grazing during one year was not dispositive, in that "(t)here are times in a farming and ranching operation that some portion of a farm or ranch will not be used for grazing in a particular year." In the Mission Viejo case, the BAA found that the "parcels were used or could have been used in the normal operation of the ranch" and were therefore eligible for agricultural classification. The court of appeals affirmed the BAA's determination in both cases.[5]
Although the interpretation of a statute by an agency charged with its administration, such as the BAA, is entitled to deference, a reviewing court is not bound by that interpretation where it is inconsistent with the clear language of the statute or with legislative intent. Huddleston v. Grand County Bd. of Equalization, 913 P.2d 15, 17 (Colo.1996); Boulder County Bd. of Equalization v. M.D.C. Constr. Co., 830 P.2d 975, 981 (Colo.1992).
Because this case turns on interpretation of sections 39-1-102(1.6) and (13.5), we must first look to the plain language of the statute to determine its import. Bertrand v. Board of County Comm'rs, 872 P.2d 223, 228 (Colo.1994). Furthermore, we must presume that the legislature intended the statute to have a just and reasonable result. State Eng'r v. Castle Meadows, Inc., 856 P.2d 496, 504 (Colo.1993).

A.
In order for a piece of land to be classified as agricultural land for ad valorem tax purposes, section 39-1-102(1.6)(a)(I), 16B C.R.S. (1994), requires that it be a "parcel of land... used as a farm or ranch or be in the process of being restored through conservation practices" in both the prior two tax years and the tax year at issue. Section 39-1-102(13.5), 16B C.R.S. (1994), defines a ranch as a "parcel of land used for grazing livestock for the primary purpose of obtaining a monetary profit."
The three questions that arise when construing these statutes are: the meaning of "parcel," the meaning of "agricultural use" and the meaning of "conservation practices."
We first address the use of the word "parcel" in the statute. In section 39-1-102(13.5), a ranch is itself defined as a "parcel of land which is used for grazing livestock for the primary purpose of obtaining a monetary profit." The Land Valuation Manual, *722 produced by the Division of Property Taxation and relied upon by assessors, concludes that the term "parcel" means "a defined area of real estate." 3 Assessor's Reference Library: Land Valuation Manual 10.2 (Rev.1/95). Section 30-28-302, 12A C.R.S. (1995 Supp.), which pertains to substitution of a subdivision plat for a description of a parcel in the county records, defines the term parcel as: "a contiguous land area except for intervening easements and rights of way with a continuous boundary defined by either the methods specified in subsection (2) of this section when the description of the parcel has been recorded in the office of the county clerk and recorder or by reference to a recorded subdivision plat." These sources suggest that the term parcel refers to a contiguous body of land. Case law from other jurisdictions provides further support for the conclusion that a parcel is generally defined as a contiguous body of land.[6]
Thus, the initial question that the BAA[7] must consider in reviewing a county assessor's classification of a piece of land as agricultural is whether it is a segregated parcel that should be treated as a single unit; or whether it is part of an integrated larger parcel. We conclude that this determination is a factual one, controlled by whether the land is sufficiently contiguous to and connected by use with other land to qualify it as part of a larger unit or whether it is a parcel segregated by geography or type of use from the balance of the unit. In defining the "functional parcel"[8] for this purpose, the BAA should take into account the physical characteristics of the rancher's property such as the location of natural boundaries like rivers or bluffs and the location of man-made boundaries like fences. The BAA should also take into account the use of the property as it either integrates or conflicts with the use of the larger unit. For example, if the land being assessed is part of a fenced pasture, the whole pasture should be viewed as the functional unit. On the other hand, we do not read the statute to permit an entire ranch consisting of numerous contiguous and non-contiguous pieces of land, to be classified as one "parcel" for purposes of this analysis.[9]
In the cases before us, Mission Viejo appears to have made an argument that the pieces of land at issue were used as a part of a larger agricultural "parcel"; however, the BAA made no findings as to whether that *723 testimony played a role in its ultimate conclusion that the pieces of land were agricultural nor did it make any findings as to the boundaries of the unit. In the Clarke case, the only reference to a larger "parcel" related to the Cockriel lease, and there was no testimony that Cockriel was using the contested piece of land in conjunction with other ranching property owned by Clarke.
We conclude that the appropriate first step in these cases on remand to the BAA is for the BAA to define the boundaries of the piece of land being classifiedwhether it is a free-standing "parcel" or is part of a larger agricultural "parcel"based upon the criteria set forth herein. Once the "functional parcel" has been defined the BAA must determine whether the taxpayer is putting that parcel to an actual agricultural use.
We turn then to the definition of actual "agricultural use." Clearly, the statutes require that in order for land to be classified as a ranch, the land must be used for grazing livestock.[10] Furthermore, the plain meaning of the phrase "used for grazing" is that livestock actually graze on the land.
We find no indication in the statutory text of sections 39-1-102(1.6) and (13.5) to indicate that the legislature intended to broaden the meaning of the phrase "use for grazing" to include parcels that the taxpayer intended to use for grazing, but did not. The taxpayer's subjective intent to use the land is not relevant for ad valorem tax classification purposes. See Boulder County Bd. of Equalization v. M.D.C. Constr. Co., 830 P.2d 975, 981 (Colo.1992)(holding that a landowner's intent to develop the land in the future had no bearing on classification of the land as agricultural). Rather, the actual surface use of the land must be the focus of any classification of agricultural land for property tax assessment purposes. See id.; Estes v. Board of Assessment Appeals, 805 P.2d 1174, 1175 (Colo.App.1990). We therefore conclude that there must be actual grazing on the parcel, as defined in functional terms, during each relevant tax year to qualify for agricultural classification unless the land is subject to non-use for conservation purposes.[11]
Lastly, we turn to the legislature's inclusion of conservation practices as an exception to the actual agricultural use requirement. The legislature did anticipate that a taxpayer would not necessarily graze every parcel in every year. Thus, it provided for an exception in section 39-1-102(1.6)(a)(I) for land "which is in the process of being restored through conservation practices." Douglas County argues that in order to qualify for this exception the taxpayer must prove that a professionally prepared conservation plan is in place. We do not interpret the statute so narrowly.
As discussed above, section 39-1-102(1.6)(a)(I) makes reference to land that is in the process of being restored through conservation practices. The statute makes no mention of a professionally prepared conservation plan and we do not interpret it to require one.[12] Rather, we interpret the statute to require the taxpayer to prove that the non-use was reasonably related to the overall grazing operationsuch as deferred use as part of a grazing rotation plan; such as protecting the land to enhance productivity of forage for future grazing needs; or such as reseeding and fertilization. The non-use must be both purposeful and an integral part of the grazing operation. Neglect by the *724 landowner or lessee or basic unsuitability of the land for grazing will not suffice.

B.
In conclusion, we hold that in order for a parcel to qualify for an agricultural tax classification pursuant to sections 39-1-102(1.6) and (13.5), the taxpayer must prove that the functional parcel was actually grazed unless it was purposefully not grazed for conservation reasons as part of an integrated grazing operation.

III.
We are unable to apply those factors to the BAA findings in the cases before us. In the Clarke case, the evidence clearly indicates that no grazing took place on Lot 2 during calendar year 1991. The parcel was not left idle as a conservation practice, but rather because of unavailability of water. When Martin Cockriel leased property to the north of Lot 2 which provided access to water, he began grazing Lot 2 with his horses. It would thus appear that the property was not put to the required actual agricultural use, and no legitimate conservation reason was offered for that omission. However, we cannot determine whether the BAA considered the land as a part of a larger agricultural unit on which actual agricultural use was occurring and arrived at its classification accordingly. The BAA does hold that there was a "farming and ranching operation" and that "most operators have excess pasture to be prepared for the changes in weather and seasons" however, those findings are not sufficiently explicit to justify a conclusion that the land was truly part of a larger unit[13] that was being grazed or was part of a conservation effort. Accordingly, we reverse and remand the Clarke case to the court of appeals with directions to return the case to the BAA for further findings.
Classification of the Mission Viejo property is similarly difficult to evaluate on the record. There was evidence that Parcel 4 was grazed in 1988 and 1989, but no clear evidence that it was grazed in 1987. As to Parcels 1, 2, and 3 grazing did not occur as required in each successive relevant tax year.[14] Mission Viejo provided no proof that the use of these parcels was deferred for conservation purposes as part of an overall grazing plan. Rather, the testimony suggested that the parcels were not grazed due to mere inadvertence. The BAA finding that the parcels "could have been used for grazing" indicates only that the property was available for grazing in the relevant tax years but does not establish the reason for the non-use of the parcels. Because the record is unclear on this point, we cannot make a determination as to whether the parcels were part of a conservation practice that entailed non-use. Additionally, we are unable to determine whether the BAA viewed any of the parcels as part of a larger functional unit for classification purposes. We therefore, remand to the court of appeals with directions to return the case to the BAA for rehearing to determine whether the parcels at issue were not grazed for conservation purposes.

IV.
In conclusion, we hold that in order to qualify for agricultural tax treatment pursuant to sections 39-1-102(1.6)(a)(I) and (13.5), 16B C.R.S. (1994), the taxpayer must prove that actual grazing of the parcel took place in the applicable tax year unless the reason the land was not grazed related to a conservation practice; or unless the land in question is part of a larger agricultural unit on which grazing or conservation practices have occurred during the relevant tax years. Therefore, we reverse the decisions of the BAA and the court of appeals. We remand the cases to the court of appeals with directions to return them to the BAA for further hearing to determine whether these parcels are *725 eligible for agricultural classification under the guidelines set forth in this opinion.
HOBBS, J., does not participate.
NOTES
[1] Because these cases raise the same issue, we consolidated them for purposes of briefing and oral argument before the Supreme Court.
[2] She also filed a petition for abatement of taxes based on the 1991 classification, which is not here at issue.
[3] Our grant of certiorari in the Mission Viejo case referred to the 1987 version of section 39-1-102(1.6)(a)(I). See 39-1-102(1.6)(a)(I), 16B C.R.S. (1987 Supp.). The legislature amended the 1987 version of section 39-1-102(1.6)(a)(I) in 1990. See ch. 277, secs. 16, 37, § 39-1-102, 1990 Colo.Sess.Laws 1687, 1695, 1703. Because the amendment does not affect the issues involved in this case, for clarity, we refer throughout this opinion to the present version of the statute printed in the 1994 replacement volume to the Colorado Revised Statutes.
[4] During the hearings on implementing legislation for Article X, section 3 of the Colorado Constitution, the legislators emphasized that the purpose of the favorable tax treatment for agricultural land was recognition of a social policy in favor of maintaining affordable food prices. See Hearings on S.B. 6 Before Senate Finance Committee, 54th Gen. Assembly, 1st Sess., March 3, 1983, Audio Tape No. 83-11; Hearings on S.B. 6 Before House Finance Committee, 54th Gen. Assembly, 1st Sess., April 18, 1983, Audio Tape No. 83-22. As such, the statutes implementing the agricultural tax provision of article X, section 3 should be construed in light of this purpose.
[5] In both Mission Viejo and Clarke, the court of appeals indicated that the determination of what constitutes agricultural use is a factual one to be made by the BAA on the basis of all the evidence presented at the hearing. See Mission Viejo, No. 93CA2115, slip op. at 3; Clarke, 899 P.2d at 243. Whether a party's use of the property constitutes actual agricultural use is primarily a factual question. However, an interpretation of what the legislature intended when it required agricultural use in order for the property to be classified as agricultural for tax purposes is a question of law for the courts to decide. See Boulder County Bd. of Equalization v. M.D.C. Constr. Co., 830 P.2d 975, 981 (Colo.1992).
[6] See Adams Tree Serv., Inc. v. Transamerica Title Ins. Co., 20 Ariz.App. 214, 511 P.2d 658 (1973) (interpreting mechanics lien statute that included the word parcel; parcel means contiguous quantity of land in possession of, owned by, or recorded as property of the same claimant, person or company); Floral Hills Memory Gardens, Inc. v. Robb, 227 Ga. 470, 181 S.E.2d 373 (1971) (interpreting term parcel of land in a deed and holding that such term does not reference size rather it refers to a contiguous quantity of land); Board of Envtl. Protection v. Bergeron, 434 A.2d 25 (Me. 1981) (determination of whether two pieces of land bisected by a road constituted one parcel depended on amount of integration between pieces of land which fell on opposite side of road, as well as past use, and present suitability for large-scale integrated development); State ex rel. Symms v. City of Mountain Home, 94 Idaho 528, 493 P.2d 387 (1972) (parcel means a consolidated body of land; whether two pieces of land constitute a single parcel is a question for the jury and depends on the use and appearance of the land, its legal subdivision, and the intent of the owner).
[7] Throughout this opinion, we refer to the BAA as the decision-making body. We recognize that on an ongoing basis, the county assessor must classify the land for tax purposes and will be required to apply the criteria set forth in this opinion.
[8] If the taxpayer contends that the parcel should be analyzed as part of a larger functional unit, the burden would be upon that taxpayer to present evidence to that effect. See Gyurman v. Weld County Bd. of Equalization, 851 P.2d 307, 310 (Colo.App.1993).
[9] As indicated, contiguity need not be absolute, and may exist irrespective of intervening roads, easements or natural intrusions. However, we recognize that our interpretation of §39-1-102(1.6) and (13.5) precludes agricultural classification for truly non-contiguous parcels on which there is no grazing or conservation practice, but which might nevertheless serve a legitimate ranching purpose such as equipment storage. We read the language of the statute as clear and unambiguous. Therefore, it must be applied as written. Dunton v. People, 898 P.2d 571, 573 (Colo. 1995). Such an application leads to the inescapable result that a parcel of land must be grazed or used for conservation purposes to qualify for agricultural classification. How the assessor defines the parcel to be analyzed under that standard is a question of fact, governed by principles identified in this opinion.
[10] A parcel may also qualify for an agricultural classification if it is used as a farm pursuant to § 39-1-102(3.5), 16B C.R.S. (1994). As neither party in this case is arguing that they used their property as a farm, we do not consider this kind of agricultural use within this opinion.
[11] We do note that once animals are released into a pasture, they may not graze every acre of that pasture, through no fault of the landowner or lessee. It is enough, therefore, that the animals have access to the pasture for grazing use. This observation is more relevant to the threshold determination of what constitutes the "parcel" for purposes of classification analysis, in that the assessor may determine that the agricultural "parcel" is really the entire pasture. See supra p. 12-14.
[12] Although not necessary, a professionally developed conservation plan would clearly constitute evidence that the land was being restored through conservation practices. See 3 Assessor's Reference Library: Land Valuation Manual 5.43 (Rev.1/95).
[13] The BAA should look both to location and use of the parcel to determine whether it was functionally integrated into a larger unit.
[14] We do not find the fact that Mission Viejo originally omitted the subject properties from its grazing lease with LEI farms to be dispositive. Not only was the omission corrected, but more importantly as explained above, it is the actual surface use of the property that must be the focus of an agricultural land classification inquiry.