979 P.2d 578 (1999)
H. Kenneth JOHNSTON II, Trustee; Timothy E. Beres; Doris J.N. Beres; and Elizabeth Ruth McVicker, Petitioners-Appellants,
v.
PARK COUNTY BOARD OF EQUALIZATION, Respondent-Appellee, and
Colorado State Board of Assessment Appeals, Appellee.
No. 98CA1353.
Colorado Court of Appeals, Div. A.
April 29, 1999.
*579 H. Kenneth Johnston II, Timothy E. Beres, Doris J.N. Beres, and Elizabeth Ruth McVicker, Pro Se
Gorsuch Kirgis LLP, Malcolm M. Murray, Denver, Colorado, for Respondent-Appellee
No Appearance for Colorado State Board of Assessment Appeals
Opinion by Judge STERNBERG.[*]
In this property tax case, petitioners, H. Kenneth Johnston II, Timothy E. and Doris J.N. Beres, and Elizabeth Ruth McVicker (taxpayers), appeal from an order of the Board of Assessment Appeals (BAA) which denied their challenge to the non-agricultural classification assigned to their property by respondent, the Park County Board of Equalization (BOE), for the 1997 tax year. We affirm.
The issue in this appeal is whether taxpayers' land qualified for agricultural classification for the 1997 tax year under the "conservation practices" provisions of the statutory scheme. We perceive no reversible error in the BAA's rejection of such claims by taxpayers.
The subject properties are three separate lots of rural land located within the same subdivision. It is undisputed that the land in the subdivision was severely overgrazed by a rancher in the 1980's. It is also undisputed that the lots were classified as agricultural land for the 1989 through 1996 tax years based on the owners' voluntary participation in an annually renewable soil conservation plan with the local soil conservation district.
For the 1997 tax year, notwithstanding the owners' continued participation in the conservation plan, the county assessor reclassified the 80-acre lot owned by McVicker as residential land, and reclassified the 40-acre lot owned by Johnston and the 35-acre lot owned by the Bereses as vacant land. In the assessor's view, eight years was a reasonable time frame for restoration under the plan, and the reclassification was based on the lack of any apparent plans for any return to actual agricultural use. Taxpayers' appeals from the BOE's decisions upholding the reclassification were consolidated before the BAA.
Following an evidentiary hearing, the BAA denied taxpayers' petitions, ruling that the subject lots were correctly classified as non-agricultural for the 1997 tax year. Specifically, while acknowledging that the lots were then enrolled in the soil conservation plan, the BAA ruled that taxpayers did not meet the requirements for agricultural land classification based on qualifying conservation practices because taxpayers had "no plans to return the land to agricultural use" by farming or ranching the lots in the future. Rather, the BAA noted that the improvements taxpayers had made were typical of actions of mountain homeowners in making the land "a more attractive residential property."

I.
On appeal, taxpayers contend that the BAA erred in so ruling, asserting that they were entitled to agricultural classification as a matter of law because they were engaged in qualifying conservation practices under the statutory criteria by their continued participation in the soil conservation plan. We do not agree.
*580 The ultimate determination as to the appropriate classification of property for property tax purposes involves mixed issues of law and fact. Thus, under the applicable standard of review, the BAA's classification determination must be sustained if it has a reasonable basis in law and is supported by substantial evidence in the record as a whole. See §§ 24-4-106(7) & 24-4-106(11)(e), C.R.S. 1998; E.R. Southtech, Ltd. v. Arapahoe County Board of Equalization, 972 P.2d 1057 (Colo.App.1998); Del Mesa Farms v. Board of Equalization, 956 P.2d 661 (Colo.App. 1998).
Furthermore, under the statutory scheme taxpayers have the burden of proof to show any qualifying uses of their land in support of their claims for agricultural classification. See Douglas County Board of Equalization v. Clarke, 921 P.2d 717 (Colo. 1996); Palmer v. Board of Equalization, 957 P.2d 348 (Colo.App.1998).
Under § 39-1-102(1.6)(a)(I), C.R.S.1998, as an exception to the otherwise applicable requirement of a showing of qualifying "farming" or "ranching" use, a parcel of land may also qualify for agricultural classification upon a showing that it is "in the process of being restored through conservation practices." The 1997 amendments to this section also added provisions further defining such qualifying "conservation practices" as including circumstances in which "a conservation plan approved by the appropriate conservation district has been implemented for the land for up to a period of ten crop years" as if the land had been placed in a federal conservation reserve program. See Colo. Sess. Laws 1997, ch. 136 at 510.
Contrary to taxpayers' argument, however, the fact of their continued participation in the soil conservation plan with the local soil conservation district is insufficient, without more, to qualify their land for agricultural classification under the foregoing provisions.
In Douglas County Board of Equalization v. Clarke, supra, 921 P.2d at 723, the supreme court held that, although a "professionally developed conservation plan" was not necessary under the then-applicable version of § 39-1-102(1.6)(a)(I), such a plan would "clearly constitute evidence" of qualifying conservation practices. However, the court did not indicate that the existence of such a plan would be dispositive of the issue by itself.
Rather, the court in Clarke held that, to qualify for agricultural classification under the "conservation practices" exception, § 39-1-102(1.6)(a)(I) requires taxpayers to prove that their "non-use was reasonably related to the overall grazing operation," i.e., that the non-use "must be both purposeful and an integral part of the grazing operation." In contrast, the court further held that "basic unsuitability of the land for grazing will not suffice." Douglas County Board of Equalization v. Clarke, supra, 921 P.2d at 723-24.
Contrary to taxpayers' further argument, we cannot say, as a matter of law, that taxpayers met their burden of proof by showing that their continued participation in the soil conservation plan was an integral part of a plan to return their lots to qualifying "farming" or "ranching" use. Although taxpayers presented limited evidence concerning this issue, the BAA was not persuaded by such evidence. Instead, conflicting inferences could be drawn regarding this issue from the evidence as a whole.
Further, as noted by the BAA, taxpayers did not attempt to establish that their lots would again be used as a portion of a larger grazing operation, and, instead, these lots have now been individually fenced to deny grazing access. The BAA also noted that there was evidence that the conservation plan had been established with a time frame for recovery from two to five years. The BAA finally ruled that Johnston's testimony regarding his unsatisfactory experience in attempting to graze two horses on his lot in the summer of 1997 demonstrated the inability of his land to sustain long term grazing on an individual lot basis.
Accordingly, we may not reweigh the evidence presented or substitute our judgment for that of the BAA on such factual matters. Rather, under the applicable standard of review, because the BAA's non-agricultural classification of the subject lots for the 1997 *581 tax year is supported by the evidentiary record and has a reasonable basis in law, this ruling will not be disturbed on review. See §§ 24-4-106(7) & 24-4-106(11)(e); E.R. Southtech, Ltd. v. Arapahoe County Board of Equalization, supra; Del Mesa Farms v. Board of Equalization, supra.

II.
We also reject taxpayers' contention that the BAA erred in failing to overturn the assessor's reclassification of the subject lots based on the assessor's alleged violation of the requirements of § 39-1-103(5)(c), C.R.S. 1998.
Section 39-1-103(5)(c) provides that property shall remain in a classification status until such time as the assessor discovers that its actual use has changed or that the classification is erroneous. This section further provides that, subject to the availability of funds in the assessor's budget for such purposes, the assessor shall inform taxpayers whose property has been reclassified from agricultural land to any other classification of the reasons for such reclassification no later than May 1 of that year.
Here, the assessor reclassified the subject lots for the 1997 tax year upon determining that continued agricultural land classification would be erroneous. Taxpayers had the opportunity to challenge the propriety of the non-agricultural classification determination in the proceedings before the BAA, but were not successful. We further note that proceedings before the BAA are de novo in nature; thus, the scope of this appeal is limited to review of the propriety of the BAA's classification determination, not that of the assessor, based on the record made in the proceedings before the BAA. See §§ 39-8-107(1) & 39-8-108(1), C.R.S.1998.
Furthermore, to the extent that the thrust of taxpayers' argument is that, by not receiving notification of the change in classification status by May 1, they were deprived of the opportunity to shape their use of the property to maintain their agricultural classification status, this contention is unpersuasive. In this regard, we note that classification is based on the use and characteristics of the property as of the assessment date, i.e., January 1, of the tax year, and taxpayers therefore would have to have used the property for agricultural purposes by that date to qualify for agricultural classification. See § 39-1-105, C.R.S.1998.
Thus, even if there may have been a technical violation of the notification and timing requirements of § 39-1-103(5)(c), we perceive no prejudice to taxpayers' substantive rights, and any such violation provides no basis for reversal of the BAA's order.
Taxpayers' remaining contentions of error are also unpersuasive.
The BAA's order is affirmed.
Judge RULAND and Justice ERICKSON[**] concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24-51-1105, C.R.S.1998.
[**] See footnote *, ante.