Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 18, 2020

**2020 CO 12**

**Nos. 18SC434,** *Mook v. Bd. of Cty. Comm'rs*; **18SC499,** *Bd. of Assessment Appeals v. Kelly*; **18SC544,** *Bd. of Cty. Comm'rs v. Hogan*—**Property Taxation—Statutory Interpretation.**

In these three cases, the supreme court considers the definition of "residential land" in section 39-1-102(14.4)(a), C.R.S. (2019).  "'Residential land' means a parcel or contiguous parcels of land under common ownership upon which residential improvements are located and that is used as a unit in conjunction with the residential improvements located thereon."  *Id.*  Thus, for undeveloped property to qualify as residential land it must be: (1) contiguous with residential land; (2) used as a unit with residential land; and (3) under common ownership with residential land.

In *Mook*, the supreme court considers the contiguity requirement and holds that only parcels of land that physically touch qualify as "contiguous parcels of land."  In *Hogan*, the supreme court addresses the "used as a unit" requirement and holds that a residential improvement isn't needed on each contiguous and

commonly owned parcel of land and that a landowner can satisfy this requirement by using multiple parcels of land together as a collective unit of residential property.  And in *Kelly*, the supreme court addresses the "common ownership" requirement and holds that county records dictate whether properties are held "under common ownership."

The supreme court affirms the court of appeals' judgment in *Mook*, affirms the court of appeals' judgment in *Hogan* and remands for further proceedings consistent with this opinion, and reverses the court of appeals' judgment in *Kelly*.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 12

**Supreme Court Case No. 18SC434**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA437

### Petitioners:

Gilbert D. Mook, Trustee; and Carol S. Mook, Trustee,

v.

### Respondents:

Board of County Commissioners of Summit County, Colorado and Board of Assessment Appeals.

**Judgment Affirmed**
*en banc*
February 18, 2020

\* \* \* \* \*

**Supreme Court Case No. 18SC499**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA431

### Petitioners:

Board of Assessment Appeals and Board of County Commissioners of Summit County, Colorado,

v.

**Respondent:**

Karen L. Kelly, Trustee.

---

**Judgment Reversed**
*en banc*
February 18, 2020

---

\* \* \* \* \*

---

**Supreme Court Case No. 18SC544**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA433

---

**Petitioner:**

Board of County Commissioners of Summit County, Colorado,

v.

**Respondents:**

Marilyn Hogan and Marc Hogan.

---

**Judgment Affirmed**
*en banc*
February 18, 2020

---

**Attorneys for Petitioners Gilbert D. Mook and Carol S. Mook; Respondent Karen L. Kelly; and Respondents Marilyn Hogan and Marc Hogan:**
Ryley Carlock & Applewhite
F. Brittin Clayton III
  *Denver, Colorado*

2

**Attorneys for Petitioner/Respondent Board of County Commissioners of Summit County, Colorado:**
Jeffrey L. Huntley, County Attorney
Juliane T. DeMarco, Assistant County Attorney
Franklin Celico, Special Assistant County Attorney
*Breckenridge, Colorado*

**Attorneys for Respondent/Petitioner/Amicus Curiae Board of Assessment Appeals:**
Philip J. Weiser, Attorney General
Emmy A. Langley, Assistant Solicitor General
Krista Maher, Assistant Attorney General
Evan P. Brennan, Assistant Attorney General
*Denver, Colorado*

**Attorneys for Amici Curiae Boards of County Commissioners of the Counties of Boulder, Chaffee, Douglas, Eagle, Garfield, Grand, Jefferson, La Plata, Larimer, Mesa, Park, Pitkin, Routt, and San Miguel:**
Michael A. Koertje, Boulder County Attorney's Office
*Boulder, Colorado*

Jennifer A. Davis, Chaffee County Attorney's Office
*Salida, Colorado*

Dawn L. Johnson, Douglas County Attorney's Office
*Castle Rock, Colorado*

Christina C. Hooper, Eagle County Attorney's Office
Katherine Parker
*Eagle, Colorado*

Katharine Johnson, Garfield County Attorney's Office
*Glenwood Springs, Colorado*

Christopher Leahy, Grand County Attorney's Office
*Hot Sulphur Springs, Colorado*

Rebecca Klymkowsky, Jefferson County Attorney's Office
Rachel Bender
Jason Soronson
*Golden, Colorado*

Kathleen L. Moore, La Plata County Attorney's Office
    *Durango, Colorado*

David P. Ayraud, Larimer County Attorney's Office
Frank N. Haug
    *Fort Collins, Colorado*

J. Patrick Coleman, Mesa County Attorney's Office
John R. Rhoads
Andrea Nina Atencio
    *Grand Junction, Colorado*

Michow Cox & McAskin LLP
Christiana McCormick
Marcus McAskin
    *Greenwood Village, Colorado*

Laura C. Makar, Pitkin County Attorney's Office
    *Aspen, Colorado*

Erick Knaus, Routt County Attorney's Office
Lynaia South
    *Steamboat Springs, Colorado*

Amy T. Markwell, San Miguel County Attorney's Office
    *Telluride, Colorado*

**Attorneys for Amici Curiae Colorado Counties, Inc. and the Special Districts Association of Colorado:**
Hall & Evans, L.L.C.
Mark S. Ratner
    *Denver, Colorado*

**Attorneys for Amicus Curiae Durango School District 9-R:**
Semple, Farrington, Everall & Case, P.C.
Darryl L. Farrington
    *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1    These three Summit County property tax cases enable us to unravel the mysteries of what constitutes "residential land" under section 39-1-102(14.4)(a), C.R.S. (2019).

¶2    Why is this definition important?  Residential land is taxed at a lower rate than vacant land.   And while we will only explore these three cases (and a companion case) today, hundreds of Colorado property owners assert that their combinations of residential and vacant parcels qualify as "residential land" under section 39-1-102(14.4)(a).  They all seek corresponding tax abatements.

¶3    Section 39-1-102(14.4)(a) defines residential land as "a parcel or contiguous parcels of land under common ownership upon which residential improvements are located and that is used as a unit in conjunction with the residential improvements located thereon."

¶4    This means that for vacant land to qualify as residential land, it must be: (1) *contiguous* with residential land; (2) *used as a unit* with residential land; and (3) *under common ownership* with residential land.  We address one of these statutory requirements in each case before us today.[1]

---

[1] We granted certiorari on the following issues:

  1. In *Mook* to review: [REFRAMED] Whether properties must be physically touching to satisfy the "contiguous parcels" requirement of section 39-1-102(14.4)(a), C.R.S. (2018).

¶5 We conclude as follows:

- In *Mook*, we hold that only parcels of land that physically touch qualify as "contiguous parcels of land."

- In *Hogan*, we hold that a residential improvement isn't needed on each contiguous and commonly owned parcel of land and that a landowner can satisfy the "used as a unit" requirement by using multiple parcels of land together as a collective unit of residential property.

- In *Kelly*, we hold that county records dictate whether parcels are held under "common ownership."

## I. Facts and Procedural History

¶6 We begin by summarizing the facts and procedural history of each case.

## A. *Mook*

¶7 The Mooks own two parcels of land in Summit County. One parcel contains the Mooks' house, and it's classified as residential land ("the residential parcel"). The other parcel is undeveloped, and it's classified as vacant land ("the subject parcel"). The parties agree that these two parcels don't physically touch — the Homeowners' Association ("HOA") owns an approximately seventeen-foot-wide

---

2. In *Hogan* to review: [REFRAMED] Whether the court of appeals properly construed the "used as a unit" requirement of section 39-1-102(14.4)(a), C.R.S. (2018).

3. In *Kelly* to review: [REFRAMED] Whether record title of all relevant properties must be held by the same person or entity to satisfy the "common ownership" requirement of section 39-1-102(14.4)(a), C.R.S. (2018).

strip of land that completely separates the two properties.  That strip provides

other members of the HOA access to adjacent public land.



¶8      The Mooks petitioned the Board of County Commissioners of Summit

County ("BCC") to reclassify the subject parcel from vacant land to residential

land.  The BCC denied their petition, and the Mooks appealed to the Board of

Assessment Appeals ("BAA").  The BAA upheld the BCC's decision.  Notably, the

BAA determined that contiguous parcels are those that are "physically

connected."  Here, the residential and subject parcels don't physically touch, and

the BAA "was not persuaded that the use of the subject lot in conjunction with the

residential lot was sufficient to defeat the plain meaning of contiguity."  Thus, the

BAA concluded that the two parcels aren't contiguous, and it denied the Mooks'

appeal.

7

¶9     The Mooks again appealed; however, a unanimous division of the court of appeals affirmed the BAA. *Mook v. Bd. of Cty. Comm'rs*, No. 17CA0437, ¶ 7 (May 3, 2018).    The division concluded that the plain and ordinary meaning of contiguous is "touching along boundaries often for considerable distances." *Id.* at ¶ 13 (quoting *Contiguous*, Webster's Third New International Dictionary (2002)). Accordingly, the division held that for two parcels to be contiguous under section 39-1-102(14.4)(a), the boundaries of those parcels must touch. *Id.* Therefore, it upheld the BAA's determination that the subject parcel isn't contiguous to the residential parcel. *Id.* at ¶ 14.

¶10    We granted the Mooks' petition for certiorari review.

## B. *Hogan*

¶11    The Hogans own three parcels of land in Summit County. Together, these parcels form an "L" shape. One parcel contains the Hogans' house, and it's classified as residential land ("the residential parcel").

¶12    A second parcel directly touches the residential parcel. Part of the Hogans' deck extends from their house onto this parcel. Although originally classified as vacant land, the Hogans successfully petitioned to reclassify this parcel as residential land ("the reclassified parcel"). That reclassification is not before us.

8

¶13    A third parcel directly touches the reclassified parcel.  This parcel contains an unpaved driveway, but it's otherwise undeveloped.  This parcel remains classified as vacant land ("the subject parcel").



¶14    The Hogans appealed the subject parcel's classification to the BCC, which upheld the vacant-land classification.  The Hogans then filed an appeal with the BAA.

¶15    Both Marc Hogan and the county assessor testified before the BAA regarding the Hogans' use of the subject parcel.  Mr. Hogan testified that the Hogans use the subject parcel to walk their dog, gather firewood, park vehicles and a trailer, and secure scenic views with a privacy buffer.  The county assessor concluded that the Hogans don't use the subject parcel as a unit with the residential and reclassified parcels.  In making that determination, she relied on

9

the Assessors' Reference Library ("ARL").[2]  According to the assessor, these ARL guidelines required the Hogans to engage in more "active" uses of the property if the parcels are to be deemed "used as a unit."  Further, she concluded that the subject parcel must contain a residential improvement, which it does not.  The BAA agreed.  The Hogans appealed.

¶16     A division of the court of appeals reversed the BAA, holding that the BAA erred regarding the "used as a unit" requirement.  *Hogan v. Bd. of Cty. Comm'rs*, 2018 COA 86, ¶¶ 1, 14, __ P.3d __.  The division first concluded that the two ARL guidelines, on which the assessor based her classification, impose requirements that exceed section 39-1-102(14.4)(a)'s plain language.  *See id.* at ¶¶ 17–18, 23.  Further, the division noted that the statute doesn't require that landowners engage in "active" property uses; thus, the BAA erred to the extent it concluded that only "active" uses can satisfy the "used as a unit" element.  *Id.* at ¶¶ 29, 35.  Finally, the division concluded that the statute's plain language doesn't require that each parcel contain a residential improvement.  *See id.* at ¶ 42.  The division therefore

---

[2] The tax code requires the Property Tax Administrator to produce manuals, procedures, and instructions to aid assessors in their valuation and assessment of property taxes.  § 39-2-109(1)(e), C.R.S. (2019).  Thus, the Property Tax Administrator produces the ARL, which assessors are required to follow. *Huddleston v. Grand Cty. Bd. of Equalization*, 913 P.2d 15, 17–18 (Colo. 1996).

10

remanded this case with directions for the BAA to "employ the correct legal standards . . . and redetermine whether the Hogans are entitled to reclassification of [the subject parcel]." *Id.* at ¶ 46.

¶17 We granted the BCC's petition for certiorari review.

## C. *Kelly*

¶18 Karen L. Kelly serves as the trustee for two separate trusts that each own a parcel of land in Summit County. A house sits on one parcel, which is classified as residential land ("the residential parcel"). The other parcel remains undeveloped, and it's classified as vacant land ("the subject parcel"). Title to the residential parcel is held in a qualified personal residence trust (the Karen L. Kelly 2011 Irrevocable Trust), while title to the subject parcel is held in a revocable family trust (the Karen L. Kelly 1990 Declaration of Trust). Ms. Kelly is the settlor, trustee, and beneficiary of each trust.

¶19 Ms. Kelly petitioned the BCC to reclassify the subject parcel from vacant land to residential land. The BCC denied her petition, and Ms. Kelly appealed to the BAA. Ms. Kelly argued that "'common ownership' exists whenever there is a common thread of ownership or control" between record owners. Thus, as the beneficiary of each trust, Ms. Kelly argued that she held the residential and subject parcels under common ownership. The BAA disagreed and upheld the BCC's decision. Describing the trusts as two "separate and distinct legal entit[ies]," the

11

BAA was "persuaded that the ownership of the subject parcel is separate and distinct from the ownership of the adjacent residential lot."

¶20 Ms. Kelly again appealed, and a division of the court of appeals reversed the BAA. *Kelly v. Bd. of Cty. Comm'rs*, 2018 COA 81M, ¶ 41, __ P.3d __. Focusing on the term "ownership," the division recognized that dictionaries and caselaw define that word broadly, in a manner that goes "beyond bare record title and instead focuses on who has the power to possess, use, enjoy, and profit from the property." *Id.* at ¶¶ 14–16. It then noted another court of appeals' decision, *HDH Partnership v. Hinsdale County Board of Equalization*, 2017 COA 134, ¶ 11, __ P.3d __, *rev'd*, 2019 CO 22, 438 P.3d 742, which addressed how to determine property ownership for tax assessment purposes. *Kelly*, ¶ 18. The *Hinsdale* division concluded that record title creates a rebuttable presumption of ownership, but courts may look beyond record title to ascertain which party actually "enjoys most of the traditional benefits of real property ownership." *See* ¶¶ 16, 26. Such evidence can establish a non-record owner as the "true owner" of the property who should be assessed the property taxes. *See id.* at ¶¶ 26, 51.

¶21 The *Kelly* division similarly concluded that, while county records establish a presumption of ownership, taxpayers may rebut that presumption by introducing evidence of "a person's or an entity's right to possess, use, and control the contiguous parcels." ¶¶ 21–22. Applying that standard, the division

12

determined that Ms. Kelly, as the trustee and beneficiary of each trust, enjoyed the "traditional benefits of real property ownership" for each parcel. *Id.* at ¶ 28 (quoting *Hinsdale*, ¶ 26). Therefore, she held the parcels "under common ownership," as required by section 39-1-102(14.4)(a). *Id.* at ¶ 41.

¶22 We granted the BCC's and the BAA's petitions for certiorari review.

## II. Analysis

¶23 We begin with the standard of review and applicable principles of statutory construction. We then explain the constitutional and statutory contexts in which this definitional conundrum surfaces. Finally, we address the three elements of residential land—"contiguous parcels," "used as a unit," and "common ownership"—in *Mook*, *Hogan*, and *Kelly*, respectively.

### A. Standard of Review and Principles of Statutory Interpretation

¶24 We review de novo issues of statutory interpretation. *Boulder Cty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo. 2011). When interpreting a statute, "[o]ur primary objective is to effectuate the intent of the General Assembly by looking to the plain meaning of the language used, considered within the context of the statute as a whole." *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010). In the absence of a statutory definition, "we construe a statutory term in accordance with its ordinary or natural meaning." *Cowen v. People*, 2018 CO 96, ¶ 14, 431 P.3d 215, 218 (quoting *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)). "In applying the plain

13

meaning of statutory language, we must 'give consistent effect to all parts of [the] statute, and construe each provision in harmony with the overall statutory design.'" *Id.* at ¶ 13, 431 P.3d at 218 (alteration to original) (quoting *Larrieu v. Best Buy Stores, L.P.*, 2013 CO 38, ¶ 12, 303 P.3d 558, 561). Further, "[w]e must adopt a construction that avoids or resolves potential conflicts, giving effect to all legislative acts, if possible." *People v. Stellabotte*, 2018 CO 66, ¶ 32, 421 P.3d 174, 180.

## B. The Gallagher Amendment

¶25 Before 1982, Colorado used a uniform taxation system. The tax authority assessed "each of the various classes of real and personal property" at an equal rate. Colo. Const. art. X, § 3(1)(a) (amended 1982). But in 1982, Colorado voters approved the Gallagher Amendment, which set the assessment rate for residential real property[3] at twenty-one percent but fixed the assessment rate for "all other taxable property" at twenty-nine percent. Colo. Const. art. X, § 3(1)(b).

¶26 Further, the Gallagher Amendment requires the legislature to annually adjust the tax rate for residential real property. *Id.* This ensures that the amount of state taxes derived from residential real property assessment remains constant.

---

[3] "Residential real property . . . shall include all residential dwelling units and the land, as defined by law, on which such units are located . . . ." Colo. Const. art. X, § 3(1)(b).

*Id.* Because of this requirement, the General Assembly has continually lowered the assessment rate for residential real property. *See* § 39-1-104.2, C.R.S. (2019).

¶27 During the years relevant to these three appeals (2013–2015), the assessment rate for residential real property was 7.96 percent. *Id.* at § -104.2(n)–(o). In contrast, the tax rate for vacant land remained at twenty-nine percent. § 39-1-104(1), C.R.S. (2019). Thus, to receive a preferential tax rate for their subject parcels, the landowners here sought to prove that their properties qualify as residential land under section 39-1-102(14.4)(a).

¶28 To qualify as residential land, property must contain a residence. *See* Colo. Const. art. X, § 3(1)(b) (defining "residential real property" to "include all residential dwelling units and the land, as defined by law, *on which such units are located*" (emphasis added)). However, section 39-1-102(14.4)(a) expressly contemplates the classification of multiple parcels as residential land. In those situations, each parcel need not contain an independent residential dwelling unit. However, any undeveloped parcels must be: (1) *contiguous* with residential land; (2) *used as a unit* with residential land; and (3) *under common ownership* with residential land. *See* § 39-1-102(14.4)(a). We address one of these statutory requirements in each case we decide today.

15

### C. *Mook*: "Contiguous Parcels"

¶29    The parties dispute what it means for parcels to be "contiguous." The Mooks claim that parcels need not touch one another. The BCC asserts the opposite. We agree with the BCC that the parcels must physically touch to be contiguous.

### 1.  Under the Plain Language of Section 39-1-102(14.4)(a), "Contiguous Parcels" Must Physically Touch

¶30    Section 39-1-102(14.4)(a) defines "residential land" to include "contiguous parcels of land." But the statute doesn't define "contiguous." In the absence of a statutory definition, "we may consider a definition in a recognized dictionary." *Cowen*, ¶ 14, 431 P.3d at 218–19.

¶31    Dictionaries define the term "contiguous" to mean "[t]ouching at a point or along a boundary; adjoining." *Contiguous*, Black's Law Dictionary (11th ed. 2019) ("Texas and Oklahoma are contiguous."); *Contiguous*, New Oxford American Dictionary (3d ed. 2010) ("sharing a common border; touching; *the 48 contiguous states*"). Therefore, "contiguous parcels of land" are those that physically touch.

¶32    This construction finds further support in the tax code, the ARL, and court of appeals caselaw. For example, section 39-27-101(19), C.R.S. (2019), defines a "Part 121 air carrier" to mean "an aircraft operator that conducts operations . . . between any two points within the *forty-eight contiguous states* of the United States." (Emphasis added.) That statutory language mirrors the definitions and

16

examples provided in the dictionaries cited above. In reference to an assessor's duty to prepare and maintain county maps, the ARL defines "contiguous parcels" as "*adjoining parcels*, under a common ownership and within the same tax area." 2 Div. of Prop. Taxation, Dep't of Local Affairs, *Administrative and Assessment Procedures* 14.2 (rev. Oct. 2019) [hereinafter *ARL*] (emphasis added); *see* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*adjoining*; [https://perma.cc/9MZ8-9NEJ] (defining adjoining as "touching or bounding at a point or line"). And two unanimous divisions of the court of appeals have likewise concluded that "contiguous," as it's used in section 39-1-102(14.4)(a), refers to parcels of land that physically touch. *Bringle Family Tr. v. Bd. of Cty. Comm'rs*, 2018 COA 64, ¶ 17, __ P.3d __ ("Thus, we conclude that subsection 102(14.4)(a)'s language unambiguously means that two parcels must actually touch to be contiguous and, thereby, to constitute residential property."); *Mook*, ¶ 13 ("Hence, for two parcels to be contiguous under section 39-1-102(14.4)(a), the boundaries of the two parcels must touch at some point.").

¶33    In support of their argument that we should interpret "contiguous" more broadly, the Mooks cite several Colorado statutes that define contiguous land to include areas that don't physically touch.

- Section 31-12-104(1)(a), C.R.S. (2019), addresses municipal annexation and requires contiguity between the annexing municipality and the to-be-annexed property. However, the statute clarifies that "[c]ontiguity

17

shall not be affected by" platted streets or alleys, public or private rights-of-way, public or private transportation rights-of-way, public lands, or "natural or artificial waterway[s]." *Id.*

- Section 31-12-702, C.R.S. (2019), allows landowners to petition to de-annex "contiguous tracts" of agricultural or farm land from a town, but it states that "[i]ntersecting highways or intervening railroads" won't defeat contiguity.

- Section 9-5-101(6), C.R.S. (2019), which defines the term "project" as it's used in the standards for accessible housing, states that contiguity isn't defeated "by a property line or by a public or private road."

- And section 30-28-302(5), C.R.S. (2019), states that, in a subdivision exemption plat, a "'[p]arcel' means a contiguous area of land, except for intervening easements and rights-of-way . . . ."

Although these statutes address topics distinct from property taxation, the Mooks assert that these sources establish that parcels remain "contiguous" even if physically separated by intrusions like roads or rights-of-way.

¶34 But these statutes hurt, rather than help, the Mooks' argument. If the legislature believed the term "contiguous" referred to both touching *and* non-touching parcels, there would have been no need for it to clarify in these statutes that contiguity isn't defeated by physical separation.

¶35 The legislature could have used similar language to qualify "contiguous" in section 39-1-102(14.4)(a). But it didn't. And "[j]ust as important as what the statute says is what the statute does not say." *Auman v. People*, 109 P.3d 647, 656 (Colo. 2005). Thus, we construe the legislature's decision to omit such qualifying language from section 39-1-102(14.4)(a) as intentional, *see id.* at 657, and, of course,

18

we must refrain from adding words to the statute, *see People v. Diaz*, 2015 CO 28, ¶ 12, 347 P.3d 621, 624.

¶36 Further, were we to construe "contiguous" to encompass both touching and non-touching parcels of land, we arguably would render superfluous the language in those other statutes clarifying that certain physically separated parcels remain contiguous. We seek to avoid constructions that would render statutory language superfluous. *Pineda-Liberato v. People*, 2017 CO 95, ¶ 39, 403 P.3d 160, 166. Therefore, we decline to construe contiguous so broadly. Instead, we conclude that the plain language of section 39-1-102(14.4)(a) requires that parcels must physically touch to be contiguous.

¶37 Despite the seeming clarity of the plain language, the Mooks encourage us to look further in gleaning legislative intent. They raise several arguments in support of their contention that this court should construe the phrase "contiguous parcels" to encompass vacant parcels that don't physically touch the homeowner's existing residential parcel. We address those arguments below.

## 2. The Mooks' Remaining Arguments

¶38 First, the Mooks provide alternate definitions of "contiguous" from dictionaries in circulation when the General Assembly adopted section 39-1-102(14.4)(a) in 1983. Those dictionaries defined contiguous to mean "touching at a point or along a boundary" *or* "[i]n close proximity." *See*

19

*Contiguous*, Black's Law Dictionary (5th ed. 1979). The Mooks urge this court to credit those definitions as more representative of the legislature's intent when it passed section 39-1-102(14.4)(a). And the Mooks assert that these dictionaries at the very least render the phrase "contiguous parcels" susceptible to more than one reasonable interpretation and thus ambiguous. *See Cowen*, ¶ 12, 431 P.3d at 218.

¶39    However, "[m]ost words have multiple definitions; the inquiry must focus on the manner and context in which they are used." *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1357 n.2 (Colo. 1983). After examining the manner and context of the language in section 39-1-102(14.4)(a), in conjunction with other statutes that explicitly clarify when contiguity isn't defeated by physical separation, we conclude the General Assembly intended the phrase "contiguous parcels" to only encompass those parcels that physically touch. Thus, we decline to find the statute ambiguous.

¶40    Second, the Mooks contend that this court's decision in *Douglas County Board of Equalization v. Clarke*, 921 P.2d 717 (Colo. 1996), indicates that contiguous land can include non-touching parcels. In *Clarke*, we considered the definition of "agricultural land" in section 39-1-102(1.6)(a)(I), C.R.S. (1994). *Clarke*, 921 P.2d at 720–21. That statute defined agricultural land, in part, as "[a] parcel of land . . . used as a farm or ranch." *Id.* at 720. In construing the statutory term "parcel," we concluded that "a parcel is generally defined as a *contiguous* body of land." *Id.* at

20

722 (emphasis added). We elaborated that "contiguity need not be absolute, and may exist irrespective of intervening roads, easements or natural intrusions." *Id.* at 722 n.9. The Mooks contend that, although not binding, that language is persuasive and indicates that "contiguity of land is not an absolute concept, and [it] may exist despite intervening roads and easements."

¶41    But *Clarke* is inapposite. *Clarke* involved a different property classification—namely agricultural land, not residential land. And the agricultural land subsection at issue in *Clarke* didn't explicitly require contiguity between various parcels. *See id.* at 720–21. We simply used the term contiguous to define "parcel"—the actual statutory term at issue. *Id.* at 722. Because the legislature intended "contiguous"—as it's used in the *residential land* subsection—to require that parcels physically touch, the Mooks' reliance on *Clarke* is misplaced.

¶42    The Mooks also cite out-of-state authority, which they assert: (1) demonstrates how other jurisdictions have construed the term "contiguous" to include non-touching parcels; or, alternately, (2) highlights how some courts have interpreted contiguous to require physical touching while others haven't, thereby rendering the term ambiguous. We are unpersuaded: Even if the definition of contiguous may be up for grabs in other states, our legislature, for the reasons stated, made its intention plain here.

¶43 Finally, the Mooks assert that we should adopt a broad definition of contiguous to reduce the relative tax burden on residential property owners. *See, e.g.*, *Vail Assocs., Inc. v. Bd. of Assessment Appeals*, 765 P.2d 593, 594–95 (Colo. App. 1988) ("Legislative hearings and particularly the final conference committee report demonstrates that the legislative intent was to grant homeowners a modicum of tax relief."). Moreover, they contend that any ambiguity should be resolved in favor of the taxpayer. Because we base our holding in section 39-1-102(14.4)(a)'s plain language, we need not rely on such extrinsic considerations to determine the meaning of contiguous. We therefore respectfully reject these remaining arguments.

### 3. The Residential Parcel and the Subject Parcel Aren't "Contiguous Parcels of Land"

¶44 The subject parcel and the residential parcel don't physically touch. They're completely separated by a strip of land owned by the HOA. Thus, these parcels don't qualify as "contiguous parcels of land" and can't satisfy the "residential land" definition in section 39-1-102(14.4)(a).

### D. *Hogan*: "Used as a Unit"

¶45 Disagreement abounds regarding what property use satisfies the "used as a unit" requirement. Several divisions of the court of appeals have come to conflicting conclusions when construing this element of the residential land definition. *See Martin Tr. v. Bd. of Cty. Comm'rs*, 2019 COA 18, __ P.3d __; *Twilight*

22

*Ridge, LLC v. Bd. of Cty. Comm'rs*, 2018 COA 108, __ P.3d __; *Hogan*, 2018 COA 86; *Rust v. Bd. of Cty. Comm'rs*, 2018 COA 72, __ P.3d __; *Fifield v. Pitkin Cty. Bd. of Comm'rs*, 2012 COA 197, 292 P.3d 1207. In reviewing these uniformly thoughtful and thorough opinions, we largely adopt the analysis employed by the *Hogan* division and by Judge Hawthorne in his dissent in *Martin Trust*. In doing so, we conclude that a landowner must use multiple parcels of land together as a collective unit of residential property to satisfy the "used as a unit" requirement.

### 1. The Assessor Applied Incorrect Legal Standards to Deny the Hogans' Petition to Reclassify the Subject Parcel

¶46　In denying the Hogans' petition for reclassification, the county assessor: (1) concluded that none of the Hogans' uses of the subject parcel satisfy the "used as a unit" requirement according to the ARL guidelines; (2) construed the "residential land" definition to require that the Hogans engage in more "active" uses of the property; and (3) testified that the subject parcel must contain a residential improvement to be classified as residential land, which the subject parcel does not. The BAA upheld the BCC's application of the residential land definition in section 39-1-102(14.4)(a) and affirmed the assessor's decision.

¶47　We defer to the Property Tax Administrator's and the BAA's construction of section 39-1-102(14.4)(a) if that statute "is subject to different reasonable interpretations and the issue[s] come[] within [their] special expertise."

23

*Huddleston*, 913 P.2d at 17.  For the reasons stated below, we agree with the court of appeals that no such deference is warranted as to the three actions described above.  On the contrary, none of those requirements correspond to the plain language of section 39-1-102(14.4)(a).  Thus, the assessor erred by relying on them to classify the Hogans' subject parcel, and the BAA erred in upholding the assessor's application of the statute.

### a. The ARL Guidelines

¶48    The ARL provides assessors with the following guidelines to consider when deciding whether property qualifies as "residential land" under section 39-1-102(14.4)(a):

- Are the contiguous parcels under common ownership?

- Are the parcels considered an integral part of the residence and actually used as a common unit with the residence?

- Would the parcel(s) in question likely be conveyed with the residence as a unit?

- Is the primary purpose of the parcel and associated structures to be for the support, enjoyment, or other non-commercial activity of the occupant of the residence?

*ARL*, *supra*, at 6.11–.12.  The ARL further states that "[i]f answers to all of these criteria are yes, then it is likely that the parcel would fall under the residential classification."  *Id.* at 6.12.

24

¶49    The assessor relied on the second (integral) and third (conveyed as a unit) ARL guidelines to determine whether the Hogans satisfied the "used as a unit" statutory requirement.

### i. Integral

¶50    The assessor interpreted the second guideline—"[a]re the parcels considered an integral part of the residence and actually used as a common unit with the residence?"—to mean the subject parcel must be "necessary" or "essential" to the Hogans' use of the residential and reclassified parcels.  And the BAA found that the assessor correctly applied the ARL guidelines to deny the Hogans' petition for reclassification.

¶51    But, as the division below noted, this construction has no basis in the statutory language.  The statute requires that contiguous parcels of land be "used as a unit."  "Used" means "employed in accomplishing something."  Merriam-Webster    Dictionary,    https://www.merriam-webster.com/dictionary/*used*; [https://perma.cc/TST4-WKK5].  A "unit" refers to "a single thing, person, or group that is a constituent of a whole."   Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*unit*; [https://perma.cc/2MDU-7E4D].  Thus, these definitions suggest the Hogans must employ the subject property as a constituent part of a larger whole.  In other

words, the Hogans should treat all three parcels—the residential, reclassified, and subject parcels—as a single residential unit and use it accordingly.

¶52 Integral means "formed as a unit with another part" and "composed of constituent parts." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*integral*; [https://perma.cc/MSG9-ZZV7]. Those definitions align with the foregoing definitions of "used" and "unit." However, the terms "necessary" and "essential" connote more than mere unity. Necessary is defined as "absolutely needed," while essential means "of the utmost importance." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*necessary*; [https://perma.cc/5LKP-CD7A]; Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*essential*; [https://perma.cc/49WJ-QX85]. These terms do not track the statutory language, and using them significantly narrows the plain meaning of "used as a unit." Therefore, we disapprove of the assessor's decision to engraft them here. *See HealthSouth Corp.*, 246 P.3d at 951 ("We do not add words to a statute."). We agree with the court of appeals that the assessor and the BAA erred to the extent that they rejected the Hogans' uses of the subject parcel for the reason that they were unnecessary or inessential to the Hogans' use of the residential parcel.

## ii. Conveyed as a Unit

¶53    Applying the third ARL guideline—"[w]ould the parcel[] in question likely be conveyed with the residence as a unit?"—the assessor concluded that the Hogans were likely to sell the subject parcel separately from the residential and reclassified parcels.  She noted that the Hogans' deck extends from their house on the residential parcel onto the reclassified parcel.  So, "[i]t was logical . . . [the residential and reclassified parcels] would be conveyed together."  In contrast, the assessor pointed out how Mr. Hogan purchased the subject parcel separately, "at a very favorable price.  And due to appreciation in Summit, it's more than likely that Mr. Hogan may sell this separately."  The assessor noted that this factor weighed against classifying the subject parcel as residential land.

¶54    But section 39-1-102(14.4)(a) defines residential land as property that "*is used as a unit.*"  (Emphasis added.)  And we previously construed identical language in the tax code to refer only to an owner's present use of property.  *See Boulder Cty. Bd. of Equalization v. M.D.C. Constr. Co.*, 830 P.2d 975, 980–81 (Colo. 1992) (addressing the definition of agricultural land).  In *M.D.C. Construction*, we noted that a parcel qualifies as a "farm" when the land "*is used* to produce agricultural products . . . ," and a parcel qualifies as a "ranch" when the land "*is used* for grazing livestock . . . ."  *Id.* at 981.  We concluded that this plain language directs assessors

27

to consider only an owner's present use of land for classification purposes, "without regard to any future intent on the part of the owner." *Id.* at 980–81.

¶55 Here too, the legislature's use of the present tense—"is used"—in section 39-1-102(14.4)(a) directs assessors to classify property as residential land according to how the owner *presently* uses the land. The ARL guidelines erroneously focus on the owner's future plans with respect to the subject property. Therefore, the court of appeals correctly concluded that the assessor and the BAA erred by relying on such guidance to classify the Hogans' subject parcel.

### b. "Active" Use

¶56 In addition to relying on the ARL guidelines to support her classification, the assessor stated that the county typically looks for "active" property uses, which she described as involving the construction of "some type of structure," like "fire pits and . . . outdoor living areas . . . where there's some investment in the property to make it an outdoor area." Because the Hogans hadn't made any structural improvements to the property, the assessor concluded that their "passive" uses were insufficient to satisfy the "used as a unit" requirement.

¶57 But, as previously noted, "used" simply means "employed in accomplishing something." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*used*; [https://perma.cc/TST4-WKK5]. The Hogans could employ the subject parcel in accomplishing something, such as walking their

28

dog or viewing nature, without engaging in those "active" uses described by the assessor. Thus, the statute's plain language doesn't so limit the permissible uses of residential land. The court of appeals properly concluded that the assessor erred by relying on this "active" use requirement to deny the Hogans' petition and that it was error for the BAA to uphold such an application of section 39-1-102(14.4)(a).

### c. Residential Improvements

¶58 Finally, the assessor interpreted section 39-1-102(14.4)(a) to require that the subject parcel contain a residential improvement.[4] Because the subject parcel didn't contain a residential improvement, the assessor concluded that she couldn't reclassify it as residential land.

¶59 However, the plain language of section 39-1-102(14.4)(a) doesn't require each parcel of land in a multi-parcel assemblage to contain a residential improvement. The statute expressly contemplates the classification of both single-parcel and multi-parcel properties. Parsing the statutory language so that

---

[4] The tax code defines "residential improvements" to include "a building, or that portion of a building, designed for use predominantly as a place of residency by a person, a family, or families. The term includes buildings, structures, fixtures, fences, amenities, and water rights that are an integral part of the residential use." § 39-1-102(14.3).

it only addresses single-parcel properties, the statute reads: "'Residential land' means a parcel . . . of land . . . upon which residential improvements are located and that is used as a unit in conjunction with the residential improvements located thereon." § 39-1-102(14.4)(a). In the multi-parcel context, section 39-1-102(14.4)(a) defines "residential land" as "contiguous parcels of land under common ownership upon which residential improvements are located and that is used as a unit in conjunction with the residential improvements located thereon."

¶60    In stating the "used as a unit" requirement, the legislature refers to the "contiguous parcels of land under common ownership" as a collective group that must together (not individually, parcel-by-parcel) satisfy that element. *Id.* Notably, the legislature used the singular verb "is" in both the single parcel and multi-parcel definitions. This indicates that, like a single parcel of land, a multi-parcel assemblage should be treated as a singular unit of property when applying section 39-1-102(14.4)(a). And the last part of the definition requires a landowner to use multiple parcels "as a *unit* in conjunction with the residential improvements located *thereon*." *Id.* (emphases added). The term "thereon" refers to the multi-parcel "unit." Thus, the statute only requires that landowners use the collective unit of property (composed of multiple, individual parcels) together with the residential improvements located on that *collective unit*. Nothing in the statute mandates that these residential improvements exist on *each parcel*.

30

¶61 If the legislature intended to require that each parcel contain a residential improvement, it could have said as much. It didn't. Instead, section 39-1-102(14.4)(a) only refers to residential improvements as they exist on a greater, multi-parcel piece of property. Thus, we agree with the court of appeals that section 39-1-102(14.4)(a) doesn't require each parcel to contain a residential improvement.

¶62 Here, the Hogans' house qualifies as a residential improvement under section 39-1-102(14.3), thereby satisfying this requirement as it applies to the Hogans' three-parcel assemblage of land. Thus, the assessor erred by denying the Hogans' petition for reclassification because the subject parcel doesn't also contain a residential improvement.

### 2. The Correct Legal Standard for Determining Whether Property Use Satisfies the "Used as a Unit" Requirement

¶63 Thus far, we've rejected the legal standards the assessor and the BAA applied to determine whether the Hogans' use of the subject parcel satisfied the "used as a unit" requirement. However, as evidenced by the multitude of cases pending around the state, assessors need more guidance on how to construe and apply this element of the residential land definition. Therefore, we supply additional direction below.

¶64 As a reminder, section 39-1-102(14.4)(a) defines "residential land" to mean "a parcel or contiguous parcels of land under common ownership upon which

31

residential improvements are located and that is used as a unit in conjunction with the residential improvements located thereon."

¶65 From that plain language, two principles emerge as essential to defining the "used as a unit" requirement. First, the Hogans must use their three parcels of land (the residential, reclassified, and subject parcels; the "contiguous parcels of land under common ownership") as a "unit," i.e., as though they're a greater, single parcel of land. Second, the Hogans should use that collective piece of property "in conjunction with the residential improvements located thereon," i.e. their house. § 39-1-102(14.4)(a).

¶66 Yet the parties disagree regarding what type of use landowners must engage in to prove they use any undeveloped parcels of land in conjunction with residential improvements located on different parcels. Because the Hogans seek to reclassify the subject parcel under the multi-parcel definition of residential land, the BAA and the BCC would have us require the Hogans to engage in some heightened use of the subject parcel (beyond mere dog-walking, nature-watching, and privacy-maintaining) to prove that it's actually "used as a unit" with the residential improvements located on the Hogans' residential and reclassified parcels.

¶67 But the Hogans argue that we shouldn't construe the statute to impose different use requirements for single parcels of land and multi-parcel assemblages

32

of land. Instead, the Hogans contend that their use of the subject parcel satisfies the "used as a unit" requirement because their multi-parcel assemblage contains a dwelling and they don't use the subject parcel for any non-residential purpose.

¶68 We agree with the Hogans. First, the statute's plain language provides no basis for imposing a heightened use requirement on landowners seeking to reclassify property as residential land by satisfying the multi-parcel definition. In regard to both single-parcel properties and multi-parcel properties, the statute simply states that a landowner must use the property as a unit in conjunction with the residential improvements located thereon. There's no textual distinction between how this requirement applies in the single-parcel context versus the multi-parcel context.

¶69 Second, the Hogans are correct that, to obtain a residential land classification, landowners must refrain from engaging in non-residential property uses. The last sentence of section 39-1-102(14.4)(a) provides that "[t]he term [residential land] does not include any portion of the land that is used for any purpose that would cause the land to be otherwise classified . . . ." Together the tax code and the ARL provide assessors with use-based definitions that

correspond to the various property classes.[5] For example, section 39-1-102(1.6)(a)(I)(A) defines agricultural land as "[a] parcel of land . . . that was *used* the previous two years and presently is *used* as a farm or ranch." (Emphases added.) Additionally, the ARL states that "[c]ommercial property includes all lands, improvements, and personal property *used* as a commercial enterprise." *ARL, supra*, at 6.28 (emphasis added). So, if a landowner's property use satisfies one of these other definitions, such use cannot satisfy the "used as a unit" requirement.

¶70    But however relatively straightforward it might be to distinguish residential land from agricultural or commercial land, the cases addressing the "used as a unit" requirement demonstrate the inherent difficulty in differentiating vacant land from undeveloped residential land. The tax code defines "vacant land" as "any lot, parcel, site, or tract of land upon which no buildings or fixtures, other than minor structures" and "site improvements" are located. § 39-1-103(14)(c)(I), C.R.S. (2019).[6] Thus, vacant land is generally undeveloped.

---

[5] The ARL lists the following property classes for assessors to choose from when classifying land: vacant; residential; commercial; industrial; agricultural; natural resources; producing mines; oil and gas; state assessed; and exempt. *ARL, supra*, at 6.1.

[6] "'Minor structures' means improvements that do not add value to the land on which they are located and that are not suitable to be used for and are not actually

34

¶71 And because we conclude that each contiguous parcel need not contain a residential improvement, there will be times (such as the present) when landowners seek to reclassify undeveloped property from vacant land to residential based solely on their purported use of that parcel in conjunction with a contiguous and commonly owned residential parcel. How, in those situations, are assessors to determine whether a landowner's use of undeveloped property qualifies the land for a residential land classification over a vacant land classification?

¶72 The fourth ARL guideline—"[i]s the primary purpose of the parcel and associated structures to be for the support, enjoyment, or other non-commercial activity of the occupant of the residence?"—remains instructive here. *ARL*, *supra*, at 6.12. This guideline doesn't incorporate requirements that go beyond the text of the statute. Instead, it (1) confirms that landowners should use any undeveloped parcels as an extension of their residence, and (2) gives greater meaning to what type of property use satisfies the "used as a unit" requirement.

---

used for any commercial, residential, or agricultural purpose." *Id.* at § -103(14)(c)(II)(A). "'Site improvements' means streets with curbs and gutters, culverts and other sewage and drainage facilities, and utility easements and hookups for individual lots or parcels." *Id.* at § -103(14)(c)(II)(B).

Further, it provides appropriate limiting language, noting that those qualifying

uses should be the "primary purpose of the parcel." *Id.*

¶73    Previous decisions by the court of appeals support a similar understanding

of the type of use that satisfies the "used as a unit" requirement.  In *Gyurman v.*

*Weld County Board of Equalization*, 851 P.2d 307, 308 (Colo. App. 1993), the county

classified part of a landowner's property as residential land and part as vacant

land.  The landowner appealed this mixed-use classification to the BAA, which

reclassified all of the landowner's property as residential land.  *Id.* at 308–09.

Notably, like the Hogans, the landowner testified that he used his land to "look[]

at the wildlife that was out there and [to] keep[] people off of it."  *Id.* at 308.  The

county asserted that this use didn't prove that the landowner used his entire land

as a unit in conjunction with his residence.  *See id.* at 308–09.  However the BAA

determined that such use did qualify the landowner's property for residential

classification.  *Id.* at 309.  And a division of the court of appeals affirmed,

concluding that the landowner's evidence provided "ample support" for the

BAA's determination that the landowner's property uses satisfied the "used as a

unit" requirement for the entirety of his property.  *Id.* at 309–10.

¶74    True, *Gyurman* addresses how the "used as a unit" requirement operates in

the single-parcel context.  But, as we've already noted, there's nothing in section

39-1-102(14.4)(a)  to  indicate  that  the  "used  as  a  unit"  requirement  applies

differently when a landowner seeks to reclassify a single parcel of land versus a multi-parcel assemblage of land. Thus, *Gyurman* demonstrates how property uses such as those contemplated by the fourth ARL guideline and testified to by the Hogans are sufficient to satisfy the "used as a unit" requirement.

¶75 Finally, section 39-1-102(14.4)(a) provides the "residential land" definition that assessors must rely on to classify property. In contrast, the legislature defined "vacant land" in section 39-1-103(14) to assist assessors "in *determining the actual value* of vacant land." § 39-1-103(14)(a) (emphasis added). And it expressly limited the application of that definition, noting that it is only "*[f]or the purposes of this subsection 14.*" *Id.* at § -103(14)(c)(I) (emphasis added). When statutes irreconcilably conflict, "we have adopted a canon of statutory construction that a specific statutory provision 'acts as an exception to that general provision, carving out a special niche from the general rules to accommodate a specific circumstance.'" *Stellabotte*, ¶ 32, 421 P.3d at 180 (quoting *Martin v. People*, 27 P.3d 846, 852 (Colo. 2001)).

¶76 Whether the Hogans' subject parcel satisfies the "used as a unit" requirement is an issue of *classification*, not *valuation*. And, the residential land definition addresses the specific circumstances present here. That definition expressly permits the reclassification of undeveloped property if the parcel is contiguous to residential land, commonly owned with residential land, and used

37

as a unit with residential land. And the Hogans seek to reclassify not just any undeveloped parcel but one that is contiguous to, and under common ownership with, their residential land and which they purportedly use in conjunction with their home. Thus, to the extent the residential land definition irreconcilably conflicts with the vacant land definition, we elect to apply the residential land definition here.

¶77 The plain language of section 39-1-102(14.4)(a), the ARL, and relevant court of appeals caselaw indicate that, to satisfy the "used as a unit" requirement, a landowner must use multiple parcels of land together as a collective unit of residential property. This is the standard the BAA should apply on remand to determine whether the Hogans' use of the subject parcel satisfies the "used as a unit" requirement of section 39-1-102(14.4)(a).

### E. *Kelly*: "Common Ownership"

¶78 Based on the plain language of the tax code, county records establish property ownership and thus indicate whether parcels are held under "common ownership."

#### 1. Under the Plain Language of the Tax Code, Property Ownership is Determined According to Record Title

¶79 Ms. Kelly asserts that "common ownership" is best understood as a distinct phrase, so this court shouldn't construe that phrase by separating it into its constituent words—"common" and "ownership." She thus urges this court to

look past the statutory language and instead interpret "common ownership" to encompass "overlapping equity ownership and control."

¶80 However, section 39-5-102(1), C.R.S. (2019), directs that "[o]wnership of real property *shall* be ascertained by the assessor from the records of the county clerk and recorder . . . ." (Emphasis added.) "There is a presumption that the word 'shall' when used in a statute is mandatory." *Riley v. People*, 104 P.3d 218, 221 (Colo. 2004). Thus, according to the plain language of the tax code, assessors must rely on county records to determine whether properties are held under "common ownership."

¶81 We came to the same conclusion in *Hinsdale*, when we held that assessors should consult county records to determine property ownership when assessing taxes. ¶ 22, 438 P.3d at 747. We based our decision on section 39-5-102(1), noting that "property tax valuation and assessment in Colorado is premised on the notion that the *party holding record title to the property is the fee owner* responsible for property taxes." *Id.* at ¶¶ 22, 25, 438 P.3d at 747, 748 (emphasis added). *Hinsdale* therefore rejected the court of appeals' use of a substance-over-form analysis that would've allowed individuals to overcome record title by presenting evidence that a non-record owner "enjoy[ed] most of the traditional benefits of real property ownership," thus becoming the "true owner" for purposes of tax assessment. *See id.* at ¶¶ 14–15, 40, 438 P.3d at 746, 751.

39

¶82     Ms. Kelly asserts that *Hinsdale* addressed a sufficiently distinct issue—determining ownership for tax *assessment*, not tax *classification*—such that we need not align our decision in this case with *Hinsdale*. She argues that assessors can "utilize record title to determine 'ownership' for purposes of tax liability as required by [*Hinsdale*], while simultaneously considering unrecorded instruments to determine 'common ownership' under section -102(14.4)(a)."

¶83     However, nothing in the plain language of section 39-5-102(1) limits its application to property tax assessment or indicates that other sources of ownership should control in property tax classification cases. Therefore, we won't require assessors to use different standards when classifying property and assessing taxes.

¶84     Further, in *Hinsdale* we noted several policy considerations that weighed in favor of using county records to determine property ownership. ¶ 46, 438 P.3d at 752. Upon reviewing the *Hinsdale* division's decision, we stated that the rebuttable presumption analysis "could have unintended consequences"; for example, it "could significantly burden county assessors, who often have limited resources." *Id.* And the *Kelly* division's analysis fosters those exact concerns. *Kelly* would leave individuals free to rebut an assessor's "common ownership" determination by raising conflicting evidence of ownership not reflected in the county records. Assessors would then have to wade through this evidence to determine whether

the individual established common ownership despite not holding record title. We again decline to burden assessors with this task.

¶85 We recognize that Ms. Kelly isn't urging this court to affirm the court of appeals by relying on the division's analysis. However, her suggested alternative approach is even more problematic than the rebuttable presumption framework adopted by the court of appeals. The *Kelly* division at least would have allowed assessors to initially rely on county records to determine ownership. Yet Ms. Kelly argues that assessors should consider unrecorded evidence of equity ownership and control *during the initial classification stage*. Ms. Kelly's approach would thus place an even greater burden on assessors. Therefore, we reject such a framework for determining ownership under section 39-1-102(14.4)(a). Instead, we direct assessors to rely on county records when deciding whether properties are held under "common ownership."

### 2. The Residential Parcel and the Subject Parcel Aren't Held "Under Common Ownership"

¶86 The parties don't dispute that, according to the county records, a different trust owns each of the two parcels. Thus, those two parcels aren't held under

41

common ownership as required by section 39-1-102(14.4)(a), and the subject parcel can't qualify as residential land.[7]

## III. Conclusion

¶87    We affirm the court of appeals' judgment in *Mook*.  We affirm the court of appeals' judgment in *Hogan* and, on remand, direct the BAA to apply the legal standards we articulate today to determine whether the Hogans' use of the subject parcel satisfies the "used as a unit" requirement of section 39-1-102(14.4)(a).  We reverse the court of appeals' judgment in *Kelly*.

---

[7] Ms. Kelly asserts that we should define "common ownership" to encompass overlapping ownership interests.  The BCC and the BAA favor a narrower construction, which would require that identical parties hold record title to each contiguous parcel.  Because distinct trusts own each parcel, the outcome of this case remains the same no matter how we define "common."  Therefore, we decline to decide whether "common ownership" refers to identical ownership or merely overlapping ownership.